STATE EX REL. EARL CHARLES BUSH v.
HORACE B. WHITTIER.[1]

May 28, 1948.

No. 34,683.

*William W. Fink,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *Ralph A. Stone,* Assistant Attorney General, for respondent.

THOMAS GALLAGHER, JUSTICE.

This is an appeal from an order discharging a writ of habeas corpus and remanding relator to the custody of respondent as superintendent of the Minnesota State Reformatory at St. Cloud.

On March 23, 1939, an information charging relator, who was then 16 years of age, with the crime of robbery in the first degree was filed in the district court for Ramsey county. On March 24, 1939, he entered a plea of guilty and was sentenced to the state reformatory at St. Cloud for not less than five nor more than 40 years. The sentence thus imposed has not been reversed or set aside and has not expired.

On February 27, 1943, the state board of parole paroled relator under the terms of an agreement then entered into with him whereby it was required that relator should not drink intoxicants, loaf, stay out at night, visit public dance halls, associate with doubtful or objectionable company, or in anywise violate any state or federal law. The agreement, which further provided that the parolee was not permitted to marry without permission of the state board, particularly specified:

"He shall be liable to be retaken and again confined * * * *for any reason that shall be satisfactory to the State Board of Parole, and at its discretion, until he receives written notice from said Board that his final discharge has been ordered."* (Italics supplied.)

The conditions of the parole were accepted by relator on February 27, 1943. On April 1, 1943, the chairman of the board of parole executed the following instrument:

"This is to certify that the undersigned, as Chairman of the Board and Director of Probation and Parole, was by resolution of the Minnesota State Board of Parole, authorized in behalf of said Board to execute orders relinquishing supervision, custody and control of parolees and probationers under its jurisdiction when entering the United States military service; and, in conformity with such authority,

"*It Is Ordered that the Minnesota State Board of Parole hereby relinquishes all custody, control and supervision of Earl Charles Bush No. 15026 on Parole to said Board of Parole since February 27, 1943 and now under its supervision, during all of such time as he is in the United States Military service, such relinquishment of custody, control and supervision to commence when he is fully inducted into the United States military service."* (Italics supplied.)

Shortly thereafter, relator entered the military service of the United States. While in the army and before the revocation of his parole, he married without the knowledge or authorization of such board. Likewise, while in the army, he committed various violations of military law and was committed to the Disciplinary Barracks at

Milwaukee, Wisconsin, and there confined until on or about October 21, 1947. At that time he was released by the military authorities and dishonorably discharged from the military service.

In the meantime, on June 19, 1946, the state board of parole, in regular meeting, rescinded the parole granted relator and ordered his return to the St. Cloud reformatory. On that date, a warrant for his arrest and return was issued by such board. On June 16, 1947, he executed a "Waiver of Extradition," reading in part as follows:

"I, Earl Charles Bush, * * * being a fugitive from the justice of the State of Minnesota, * * * having * * * violated the terms of my parole agreement, do hereby waive the issuance and service of all extradition proceedings and freely and voluntarily agree to return to the State of Minnesota * * *."

On or about October 23, 1947, he was returned to the reformatory and is now confined there. On November 5, 1947, proceedings were instituted to obtain his release, and on January 9, 1948, the order discharging the writ of habeas corpus was made.

In the court below and here relator contends (1) that the parole board possessed the power to execute the relinquishing agreement of April 1, 1943, and that in effect such agreement constituted a final and complete discharge from parole; and (2) that, if such agreement was not a final discharge, in any event by virtue thereof, all custody, control, and supervision by the parole board was abandoned for the period during which relator was in military service, and hence that revocation of his parole for any violations of the original parole agreement occurring while he was in military service was unauthorized.

1. M. S. A. 637.06 provides:

"The state board of parole may parole any person sentenced to confinement in the * * * state reformatory * * * [exception not applicable here]. Upon being paroled and released, such convicts shall be and remain in the legal custody and under the control of the state board of parole, subject at any time to be returned to the * * * state reformatory, * * *. The written order of the board of

parole, certified by the chairman of the board, shall be sufficient to any peace officer or state parole and probation agent to retake and place in actual custody any person on parole * * *. Paroled persons, * * * may be placed within or without the boundaries of the state at the discretion of the board, and the limits fixed for such persons may be enlarged or reduced according to their conduct."

Section 637.08 provides:

"* * * when any person upon parole has kept the conditions thereof in such manner and for such period of time as shall satisfy the board that he is reliable and trustworthy, and that he will remain at liberty without violating the law, and that his final release is not incompatible with the welfare of society, *then the board shall have power in its discretion to grant to such prisoner a final discharge * * *."* (Italics supplied.)

Section 637.10 provides:

"The board of parole, as far as possible, shall exercise supervision over paroled and discharged convicts and probationers * * *."

Section 637.12 provides:

*"The state board of parole shall have power,* from time to time, to make, alter, amend, and *publish rules governing the granting of paroles and final discharges and the procedure relating thereto, and as to the conditions of parole and the conduct and employment of prisoners on parole, and such other matters touching the exercise of the powers and duties conferred upon the board * * * as the board may deem proper."* (Italics supplied.)

It is clear that § 637.08 vests in the state board of parole authority to grant a final discharge of a convict. Until a convict has been finally discharged by the board, it retains control and legal custody over him, and he remains subject to its orders and subject to reincarceration at any time *in its discretion.*

2. The language of the instrument dated April 1, 1943, does not indicate a final discharge of relator. Thereunder, the board merely *relinquished control* and supervision "during all of such time as he

is in the United States Military service." This could not be construed as a final discharge any more than could a release to the custody of an employer or permission extended to leave the confines of the state for specified work be so construed. The language used indicates merely that for a specified period of time the board agreed not to exercise the control which at all times it possessed and retained. It is likewise clear that upon the termination of the period for which such control was relinquished the board reserved the right to reassert its power of custody over relator.

3–4. Relator contends, however, that while control and custody were thus relinquished any conditions imposed upon him under the original terms of the parole agreement were suspended, and hence that during the period he was in the armed services he was not subject to the control or direction of the board, so that his acts while in the army could not, under any circumstances, be held to be a violation of the original parole agreement.

While this may be sound reasoning, it cannot be overlooked that the original agreement releasing relator upon parole was a conditional one, effective only until such time as revoked by the board. Therein it was specifically stated that relator might be retaken and confined for *"any reason that shall be satisfactory to the State Board of Parole, and at its discretion."* (Italics supplied.)

This is not in conflict with the statutory authority vested in the state board of parole under § 637.06, which specifically provides that the parolee shall remain in the control of the state board of parole "subject at any time to be returned to the * * * state reformatory." Thereunder, by virtue of the discretionary statutory power vested in the board, it at all times had power to revoke relator's parole agreement and return him to custody regardless of his conduct and whether or not such conduct constituted a violation of the conditions imposed upon him by the parole agreement.

Thus, in State ex rel. Jaffa v. Crepeau, 150 Minn. 80, 82, 184 N. W. 567, 568, we said:

"This statute [G. S. 1913, § 9273] gives to the board the power to order the return of a paroled prisoner in the exercise of their *judgment and discretion. No trial or hearing is provided for.* The board in causing the arrest and demanding the return of relator accordingly acted within the law, * * *." (Italics supplied.)

In Guy v. Utecht, 216 Minn. 255, 265, 12 N. W. (2d) 753, 758, we stated:

"The rationale of the cases holding notice or hearing unnecessary is that, *since a pardon is an act of grace and not something which the prisoner can demand, the revocation thereof does not deprive him of any legal right.* Upon its revocation, the status of the prisoner must be regarded as being the same as it was before the pardon was granted. He has been at liberty by virtue of the clemency of the board of pardons, which he accepted in writing upon the conditions stated in the pardon, among which was the *reservation by the board of the right to determine for itself whether the conditions had been broken,* and, if so, to revoke the pardon." (Italics supplied.)

In the light of the above facts and authorities, it is clear that relator could only be finally discharged from custody of the board by its formal action to such effect as provided for in § 637.08; that it has at no time taken such action. Accordingly, relator still remains under its control and custody. It is further clear that the board in its discretion could revoke the original parole agreement with or without a hearing and return relator to its custody with or without cause, notwithstanding the fact that relator's violation of military law while in the United States army did not constitute a violation of the conditions of his parole. See, In re Tobin, 130 Cal. App. 371, 20 P. (2d) 91; People ex rel. Ross v. Lawes, 242 App. Div. 638, 272 N. Y. S. 169; People ex rel. Hannon v. Warden of Penitentiary, 209 App. Div. 521, 205 N. Y. S. 235; People ex rel. Romain v. Parole Comm. 116 Misc. 758, 191 N. Y. S. 410; People ex rel. Ackron v. Hunt, 122 Misc. 247, 202 N. Y. S. 537; In re Tate (D. C.) 63 F. Supp. 961; Ex parte Wright, 139 N. J. Eq. 515, 52 A. (2d) 419.

5. The record does not disclose the circumstances surrounding relator's violation of military law or what constituted the same, but it does indicate that he has paid the penalty therefor while serving in the army. To date, approximately nine years of his original sentence have been served. He was only 16 years of age at the time of his original confinement. His original crime was robbery of a taxi driver. It would seem that relator's debt to society for this offense has been repaid. The state board of parole should take these factors into consideration when acting upon his further applications for clemency or parole and give substantial weight thereto.

Order affirmed.

MR. JUSTICE KNUTSON, not having been a member of this court at the time of the argument, took no part in the consideration or decision of this case.

