Joseph MENECHINO, Plaintiff-Appellant,

v.

Russell G. OSWALD, as Chairman of the New York State Board of Parole, New York State Board of Parole, Defendants-Appellees.

No. 871, Docket 34665.

United States Court of Appeals, Second Circuit.

Argued June 16, 1970.

Decided Aug. 5, 1970.

David Rosenberg, New York City (Leonard B. Boudin, Rabinowitz, Boudin & Standard, New York City, on the brief), for plaintiff-appellant.

Hillel Hoffman, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for defendants-appellees.

Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.[*]

MANSFIELD, District Judge.

This appeal by a state prisoner from a judgment of the district court dismissing his complaint under the Federal Civil Rights Law, 42 U.S.C. § 1983, and the Declaratory Judgment Act, 28 U.S.C. § 2201, raises the question of whether a prisoner is entitled under the Fourteenth Amendment to procedural due process rights upon his being interviewed and considered by the New York State Board of Parole for release on parole before the termination of the sentence imposed by the court. For the reasons hereinafter stated we affirm the judgment below.

The essential facts are not in dispute. Appellant is imprisoned in Green Haven Prison, Stormville, N. Y., under a sentence of from 20 years to life imposed on May 6, 1947, by the New York County Court of General Sessions pursuant to his plea of guilty to the charge of murder in the second degree. After having been paroled from Attica Prison on August 14, 1963, he was declared delinquent by the Parole Board on December 31, 1964, and was returned to prison. In May 1965 he appeared without counsel before members of the Parole Board and admitted consorting with individuals having criminal records and giving misleading information to his parole officer.

Following revocation of his parole in May, 1965, appellant appeared on March 16, 1967, at a brief session before three members of the Board of Parole for reconsideration of parole release, which was denied, the Board deciding that his case would be reconsidered in 18 months. In July, 1968, appellant commenced an Article 78 proceeding in the Supreme Court, New York County, claiming that his federal and state constitutional rights had been violated by the absence of legal counsel at his May, 1965, revocation hearing, and that the March, 1967, hearing constituted cruel and unusual punishment in violation of his Eighth Amendment rights. The complaint demanded a new hearing. An initial decision in appellant's favor by the state Supreme Court on August 27, 1968, was, on June 17, 1969, reversed by the Appellate Division, First Department, which denied his application, holding that he had "no general constitutional right to representation by counsel at the parole revocation hearing before the Board of Parole." In the meantime, in September, 1968, appellant again appeared before the Board without counsel and was again denied parole with the proviso that his case be considered in another 18 months.

In August 1969, appellant commenced the present action in the district court, invoking its jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), 1361 and 42 U.S.C. § 1983. His complaint alleges that defendants, in violation of his constitutional rights, determined that he is

"Not qualified for release on parole, which, in effect, constitutes a denial of liberty, without adhering to the minimum requirements of procedural due process: (i) notice of charges; (ii) a fair hearing, with the right to counsel, to cross-examination and to present favorable evidence and compel the attendance of favorable witnesses; and (iii) specification of the grounds and underlying facts upon which the determination was based" (Complaint ¶13).

---

[*] Of the Southern District of New York, sitting by designation.

The complaint seeks a declaratory judgment to the effect that

> "plaintiff is entitled under the Due Process Clause of the Fourteenth Amendment to (i) notice of charges, including a substantial summary of the evidence and reports before the Board, (ii) a fair hearing, including the right of counsel, to cross-examination and confrontation and to present favorable evidence and compel the attendance of favorable witnesses, and (iii) a specification of the grounds and underlying facts upon which the determination is based; * * *."

Consideration of the questions raised by appellant requires an understanding of the function and procedures of the New York Board of Parole. The Board, which consists of five members appointed by the Governor (N.Y. Executive Law, McKinney's Consol.Laws, c. 18, § 241), is required "to personally study * * * prisoners * * * to determine their ultimate fitness to be paroled" (N.Y. Correction Law, McKinney's Consol.Laws, c. 43, § 210). Toward this purpose the members have the duty of meeting at such prisons and at such times as are necessary for a full study of the cases of prisoners eligible for release on parole and of determining "when and under what conditions and to whom such parole may be granted" (N. Y. Correction Law § 210).

Release of a prisoner on parole in New York is done "solely on the initiative of the board of parole" (N.Y. Correction Law § 214) and no application for parole may be made by or on behalf of the prisoner. The Board is given broad discretionary power to grant parole, not as a reward for good conduct or efficient performance of a prisoner's duties, but "only if the board of parole is of opinion that there is a reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society" (N.Y. Correction Law § 213). The members of the Board must also be "satisfied that he will be suitably employed in self-sustaining employment if so released" (N.Y. Correction Law § 214).

In the case of a prisoner sentenced in New York to an indeterminate term, such as appellant, the collection of information forming the dossier used as the basis for the Board's decision commences almost immediately after he is sentenced. The Board is required to obtain "while the case is still fresh" information as "complete as may be obtainable" with respect to the prisoner, including a complete statement of the crime, the nature of the sentence, the names of the judge and district attorney, the probation report, and reports as to the "prisoner's social, physical, mental and psychiatric condition and history" (N.Y. Correction Law § 211). Before the prisoner is released on parole the Board must further obtain a report from the warden of each prison in which the prisoner has been confined as to the prisoner's conduct in the institution, with a detailed statement as to any infractions of prison rules or discipline; the extent to which the prisoner has responded to efforts made to improve his mental and moral condition; his then attitude toward society, the judge who sentenced him, the district attorney who prosecuted him, and the policeman who arrested him; and his attitude toward his crime and his previous criminal career. The Board is also required to have before it a report from the superintendent of prison industries giving the prisoner's industrial record in prison, and a recommendation as to the kind of work he is best fitted to perform and at which he is most likely to succeed. Lastly, the Board must also have a report as to any physical, mental and psychological examination of the prisoner which has been made within two months of his eligibility for parole.

After a prisoner sentenced to an indeterminate term has served one year, the date when he may become eligible for release on parole is "discretionary with the board of parole" (N.Y. Correction Law § 212). When a prisoner becomes

eligible the Board's practice as revealed in its rules is to schedule his appearance before three or more Board members visiting the institution where he is incarcerated, at which time he is interviewed and his case considered (N.Y. Code of Rules & Regs. § 155). Rule 155.9 expressly provides:

> "155.9 *Attendance at hearings.* Neither the inmate's attorney nor any other party will be permitted to attend or speak in person in the inmate's behalf or against him at any meeting of the Board of Parole at which the inmate's release on parole is being considered. The board shall have complete discretion with respect to the presence of any other persons at such hearings."

Following such an interview the Board decides whether the prisoner shall be released after it has considered the various reports and factors prescribed. In addition it considers "the environment to which he plans to return" and "the kind of employment secured for him." If parole is denied, the Board in its discretion may fix a future date for "reconsideration" of the case.

The Board's exercise of this discretionary power has been held by New York's highest court to be absolute and beyond court review as long as the Board violates no positive statutory requirement. Hines v. State Board of Parole, 293 N.Y. 254, 56 N.E.2d 572 (1944); Briguglio v. New York State Board of Parole, 24 N.Y.2d 21, 298 N.Y. S.2d 704, 246 N.E.2d 512 (1969). Once released on parole the prisoner, although outside prison walls, continues to be in the legal custody of the warden of the prison from which he is released and is subject to being retaken and returned to actual custody until the expiration of the term of his sentence (N.Y. Correction Law § 213); People ex rel. Natoli v. Lewis, 287 N.Y. 478, 41 N.E.2d 62 (1942); People v. Santos, 31 A.D.2d 508, 298 N.Y.S.2d 526 (1st Dep't 1969).

■ The issue before us is not whether New York, instead of expressly forbidding a prisoner to be represented by counsel or by some other person before the Board of Parole, would have been better advised to adopt statutory measures permitting such representation.[1] The question before us

---

1. For instance, the Task Force Report on Corrections, President's Commission on Law Enforcement (1967) recommends legislation providing safeguards, stating: "Obviously the legislative scheme will determine such questions as when the offender has a right to a hearing and whether he has a right to more than one" (p. 86, n. 13). The American Law Institute's Model Penal Code would permit a prisoner to consult counsel in preparation for the parole hearing but would not permit counsel to appear at the hearing. Several states by statute permit a prisoner to be represented by counsel at parole hearings. See Vernon's Texas Ann.C.C.P. art. 42.12 § 18 (1967); Georgia Code Ann. § 77–541 (1968); Montana Rev.Code § 94–9835 (1955); Michigan Comp.L.Ann. §§ 791.-234 (1958), 791.244 (1953). On the other hand, some states expressly prohibit representation by counsel at parole hearings. See Burns Indiana Adm. Rules and Reg.Ann. § (13–1609)–11; N. Y.Correction Law § 218 (1968); John v. State, 160 N.W.2d 37 (Sup.Ct.N.D.1968), interpreting N.D.Cent.Code § 12–59–15 (1963 Supp.). Others allow the Board to decide the matter, giving it the power to decline to hear counsel. See Delaware Code Ann.T. 11, § 4350 (1964); Kansas Stat.Ann. § 62–2248 (1964); Minn.Stat. Ann. § 637.06 renumbered § 243.05 (Supp. 1960); New Mexico Stat.Ann. § 41–17–27 (1955). For a complete schedule of state statutes with respect to requirements for a hearing and counsel in connection with revocation of parole and probation, see Sklar, Law and Practice in Probation and Parole Revocation Hearings, 55 J.Crim. L.C. & P.S. 175 (1964).

The Tenth Circuit Court of Appeals has held that where a prisoner is permitted to be represented by retained counsel the Equal Protection Clause dictates that appointed counsel must be provided to the indigent prisoner. Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969). Since most prisoners are indigent the effect of such a ruling in jurisdictions permitting retained counsel would probably be to flood the courts with demands for appointed counsel in the thousands of parole release interviews held annually. New York, for instance, holds over 11,000 such release hearings each year. 38th Annual Report of the Division of Parole (1967).

is whether the Constitution mandates the minimum procedural due process demanded by appellant. In resolving that issue we recognize that a fundamental condition for requiring constitutional (as distinguished from statutory) due process is the existence of governmental action which threatens to destroy or impair an existing private interest. Usually such action is accomplished through an adversary proceeding in which a vital issue of fact is resolved against a person without according him the benefit of certain fundamental safeguards. Whether such safeguards are required depends upon the nature of the governmental action and of the private interest affected by that action. The Constitution "does not require a trial-type hearing in every conceivable case of government impairment of private interest," Cafeteria & Restaurant Workers Union, Local 473, A.F.L.–C.I.O. v. McElroy, 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L. Ed.2d 1230 (1961).

■ In the present case some of the essential conditions for requiring procedural due process as a matter of constitutional right are missing. In the first place the Board of Parole is not appellant's adversary. On the contrary the Board has an identity of interest with him to the extent that it is seeking to encourage and foster his rehabilitation and readjustment to society. The Board's position was well described by Judge (now Chief Justice) Burger in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. denied sub nom. Thompson v. United States Board of Parole, 375 U.S. 957, 84 S.Ct. 446, 11 L. Ed.2d 315 (1963), where the court, sitting *en banc*, held that procedural due process was not required by the Constitution in federal parole revocation proceedings:

"The Bureau of Prisons and the Parole Board operate from the basic premise that prisoners placed in their custody are to be rehabilitated and restored to useful lives as soon as in the Board's judgment that transition can be safely made. This is plainly what

Congress intends. Thus there is a genuine identity of interest if not purpose in the prisoner's desire to be released and the Board's policy to grant release as soon as possible. Here there is not the attitude of adverse, conflicting objectives as between the parolee and the Board inherent between prosecution and defense in a criminal case. Here we do not have pursuer and quarry but a relationship partaking of parens patriae. In a real sense the Parole Board in revoking parole occupies the role of parent withdrawing a privilege from an errant child not as punishment but for misuse of the privilege. 'Probation workers making reports of their investigations have not been trained to prosecute but to aid offenders.' Williams v. People of State of New York, 337 U.S. 241, at 249, 69 S.Ct. 1079, at 1084, 93 L.Ed. 1337.

\* \* \* \* \* \*

"Fundamentally the Parole Board's interest and its objective are to release a prisoner as soon as he is a good parole risk and to allow him to remain at liberty under supervision as long as he is a good risk" (318 F.2d at 237, 242).

On the erroneous assumption that the Board's determination of whether the prisoner should be paroled is an adversary proceeding, the complaint alleges that the Board fails to give appellant "notice of charges" against him and demands that such notice be furnished. There are no "charges" or accusations against appellant. Nor is the Board necessarily called upon, in deciding whether he should be released on parole, to resolve disputed issues of fact, which might be the occasion for use of skills associated with lawyers, judges and the judicial process.

The Board's function is a different one. It must make the broad determination of whether rehabilitation of the prisoner and the interests of society generally would best be served by permitting him to serve his sentence beyond the confines of prison walls rather than

by being continued in physical confinement. In making that determination the Board is not restricted by rules of evidence or procedures developed for the purpose of determining legal or factual issues. It must consider many factors of a non-legal nature, such as psychiatric reports with respect to the prisoner, his mental and moral attitudes, his vocational education and training, the manner in which he has used his recreation time, his physical and emotional health, his intra-personal relations with prison staff and other inmates, his habits, and the nature and extent of community resources that will be available to him upon his release, including the environment to which he plans to return.

Without suggesting that legal counsel or a social worker could not render any assistance at all with respect to the numerous facets of the picture before the Board,[2] the problem to be resolved is not one which usually demands the traditional skills, training and expertise of legal counsel. Far more important is an understanding of the numerous other factors we have mentioned, which have to do with medicine, psychiatry, criminology, penology, psychology and human relations.

Another essential element missing is the existence of a private interest enjoyed by appellant, or to which he is entitled, of the type qualifying for due process protection. We readily acknowledge, of course, that appellant has an "interest" in being considered by the

Board which has the power, in its absolute discretion, to grant him the liberty of serving his sentence outside of prison walls. The type of interest protected by procedural due process, however, is usually one presently enjoyed, e. g., welfare benefits (Goldberg v. Kelly, 397 U. S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)); occupation of premises (Escalera v. New York City Housing Authority, 425 F.2d 853 (2d Cir. April 29, 1970); attendance at school (Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961)); status as an alien immigrant (Leng May Ma v. Barber, 357 U.S. 185, 78 S.Ct. 1072, 2 L.Ed. 2d 1246 (1958)); employment (Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959)); or existence as a charitable organization (Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951)). Appellant, however, does not presently enjoy freedom of movement beyond the prison walls and nothing in the state court's sentence, or in state statutes or rules, entitles him to it, whether it be labeled a "right" or a "privilege."[3] He is entitled only to be released after full service of his sentence less good time earned during incarceration. The Board is given absolute and exclusive discretion to decide whether or not to initiate parole release proceedings and, if so, whether parole should be granted to him. Appellant has been constitutionally deprived of his right to liberty for the period of his sentence. Like an alien seeking entry into the

2. There appears to be little dispute, for instance, that such a representative could sometimes assist the Board by obtaining and presenting additional relevant evidence, such as facts with respect to the prisoner's employment prospects, family and community life, and could protect against Board decisions based on misinformation or lack of adequate information. Usually the inmate is a person of limited education. Furthermore he is unlikely because of nervous tension to be able to express himself as logically to the Board as he might in a different setting.

3. In Escoe v. Zerbst, 295 U.S. 490, 492–493, 55 S.Ct. 818, 819, 79 L.Ed. 1566

(1935), the Supreme Court held that probation is not a right guaranteed by the Constitution but "comes as an act of grace to one convicted of a crime." In Jay v. Boyd, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), the court, in likewise characterizing suspension of deportation, described it as "analogous to the Board of Parole's powers to release federal prisoners on parole" (p. 354, 76 S.Ct. at 925). But see Hewett v. North Carolina, 415 F.2d 1316, 1323 (4th Cir. 1969), and Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968).

United States (as distinguished from a lawful resident alien) he does not qualify for procedural due process in seeking parole. Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625, 97 L.Ed. 956 (1953); Wong Hing Fun v. Esperdy, 335 F.2d 656 (2d Cir. 1964) (per Judge Marshall), cert. denied sub nom. Ng Sui Sang v. Esperdy, 379 U.S. 970, 85 S.Ct. 667, 13 L.Ed.2d 562 (1965).

It is questionable whether a Board of Parole is even required to hold a hearing on the question of whether a prisoner should be released on parole.[4] In this respect the determination to be made differs from revocation of parole, where plausible reasons might be advanced in favor of minimum procedural due process. It may be argued that a parolee, having been released, enjoys a liberty akin to a private interest, and that the Board is seeking to deprive him of that liberty because of his alleged violation of one or more of the conditions of his parole. Upon his denial of the allegation the Board is called upon to resolve the relatively narrow issue thus presented. Under such circumstances, it may further be contended, fundamental fairness dictates that the prisoner be accorded constitutional due process at a trial-type hearing, including the right to legal counsel with traditional skills suited to just such a controversy. Nevertheless, although various jurisdictions by statute permit the parolee to be represented by retained counsel in such a revocation proceeding, all circuit courts of appeal which have passed upon the issue —seven in number—have held that the prisoner is not entitled to due process as a matter of constitutional right. Hyser v. Reed, *supra*; Rose v. Haskins, 388 F.

2d 91 (6th Cir.), cert. denied, 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408 (1968); Williams v. Patterson, 389 F.2d 374 (10th Cir. 1968); Washington v. Hagan, 287 F.2d 332 (3d Cir. 1960), cert. denied, 366 U.S. 970, 81 S.Ct. 1934, 6 L.Ed.2d 1259 (1961); Jones v. Rivers, 338 F.2d 862 (4th Cir. 1964); Hodge v. Markley, 339 F.2d 973 (7th Cir. 1965); Mead v. California Adult Authority, 415 F.2d 767 (9th Cir. 1969). See also Dunn v. California Dep't of Corrections, 401 F.2d 340 (9th Cir. 1968) (dictum); Williams v. Dunbar, 377 F.2d 505 (9th Cir.), cert. denied, 389 U.S. 866, 88 S.Ct. 131, 19 L.Ed.2d 137 (1967); Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969); Cotner v. United States, 409 F.2d 853 (10th Cir. 1969); United States ex rel. Halprin v. Parker, 418 F.2d 313 (3d Cir. 1969).

In accord is the recent unanimous decision of the New York Court of Appeals in Briguglio v. New York State Board of Parole, 24 N.Y.2d 21, 298 N.Y. S.2d 704 (1969). In view of the unanimous rejection of constitutional due process in parole revocation proceedings, which at least present plausible grounds for such a right, the claim must fail in a release determination, where not even such grounds exist.

A final factor we are entitled to weigh is the burden which minimum due process requirements (advance notice, hearing, provision of counsel, cross-examination and findings) would place upon the State of New York and its parole procedures. Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960). According to the Annual Report of the New York Division of Parole for the year 1967, which has been furnished by counsel, New York holds

---

4. Indeed some states authorize revocation of parole and recommitment upon the Board's ex parte determination, without a hearing, much less counsel, since the prisoner is still in the custody of the state, just as if he were within the prison walls or working on a prison farm. See Colo. Rev.Stats.Ann. § 39–17–6 (1961 Supp.); N.C.Gen.Stats. § 148–61.1 (1955); 57 Okl.St.Ann. § 346 (1950); Oregon Rev.

Stats. §§ 144.340–144.370 (1969); R.I. Gen.Laws § 13–8–18 (1956); S.D.C.L. § 23–60–22 (1964); In re Anderson, 191 Or. 409, 229 P.2d 633 (1951). Other state statutes, which are silent on the subject, have been construed not to require a hearing. In re Varner, 166 Ohio St. 340, 142 N.E.2d 846 (1957); State ex rel. Bush v. Whittier, 226 Minn. 356, 32 N.W. 2d 856 (1948).

more than 11,000 parole interviews or hearings annually. From the record of appellant's interviews it appears that while the dossier of written information before the Board may be voluminous, the hearing is usually brief. If, as appellant demands, each prisoner is to appear with counsel we may reasonably anticipate that the administrative burden (including the preparation of advance notice, the subpoenaing and cross-examination of witnesses, arguments of counsel and preparation of written decisions) would be enormously increased, accompanied by the usual delays attendant upon clogged calendars. Initially, of course, there would be the problem of providing competent legal services to the prisoners themselves, most of whom are indigent. It would hardly be fair to provide that the wealthy prisoner should have the right to legal counsel whereas the great majority of prisoners would be denied that right simply because they are too poor. Although the increased administrative burden, standing alone, might not justify denial of the procedural steps demanded by appellant, we believe that when considered with the other relevant factors we have discussed, it militates against such relief.

Urging that parole release represents a form of deferred sentencing, which enables authorities to "tailor a sentence to a particular offender," appellant contends that the situation before us is governed by the Supreme Court's recent decision in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), which held that a defendant was entitled to be represented by counsel at a deferred sentencing hearing held after revocation of probation. Our attention is particularly directed to the fact that the sentencing court in *Mempa* was required under Washington state law to sentence the defendant to the maximum statutory term and that its function, like that of the Board of Parole here, was limited to making a recommendation to the Board

as to the amount of time which the defendant should be required to serve before parole. The Supreme Court noted that aid of counsel was necessary to assist the sentencing judge by marshalling the facts and introducing evidence of mitigating circumstances. Appellant argues that this would be the very function served by counsel in a parole release hearing.

■ We do not accept appellant's contention that a parole release determination is simply a continuation or deferment of sentencing. The prisoner's sentence has already been finally decreed by the court and cannot be changed. A parole Board's determination as to release, on the other hand, is not final and may be reviewed and changed at any time in the Board's discretion. We recognize that *Mempa* is analogous to our case to the extent that a sentencing hearing is essentially non-adversarial in nature, guilt having been determined, and that legal counsel, among other things, may perform a function similar to that which he might or might not perform at a parole release hearing, i. e., bringing out relevant information and arguing for clemency. However, at a sentencing hearing a lawyer may also be required to perform functions of a *legal* nature not required before the Board of Parole. For one thing he may be called upon to insure that certain legal rights, such as the right of appeal, are not waived. He may well decide at the hearing, depending upon further development of the facts, to advise a client to move to withdraw his plea of guilty [5] or to assert additional grounds for setting aside a guilty verdict or moving in arrest of judgment. These services demand his skill and training as a lawyer, not merely non-legal assistance in pleading for clemency. Thus sentencing represents a defendant's "last clear chance" to protect his legal rights at the trial court level. For this reason it has repeatedly been held that representation by legal

5. Indeed the defendant's opportunity to withdraw his plea may well prove to be his last. See McMann v. Richardson, 397

U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (May 4, 1970).

counsel is constitutionally required. Townsend v. Burke, 334 U.S. 736, 68 S. Ct. 1252, 92 L.Ed. 1690 (1948). As the Supreme Court stated in *Mempa*:

"Even more important in a case such as this is the fact that certain legal rights may be lost if not exercised at this stage. For one, Washington law provides that an appeal in a case involving a plea of guilty followed by probation can only be taken after sentence is imposed following revocation of probation. State v. Farmer, 39 Wash.2d 675, 237 P.2d 734 (1951). Therefore in a case where an accused agreed to plead guilty, although he had a valid defense, because he was offered probation, absence of counsel at the imposition of the deferred sentence might well result in loss of the right to appeal. While ordinarily appeals from a plea of guilty are less frequent than those following a trial on the merits, the incidence of improperly obtained guilty pleas is not so slight as to be capable of being characterized as *de minimis*. See, e. g., United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (D.C.S.D.N.Y. 1966). Cf. Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

"Likewise the Washington statutes provide that a plea of guilty can be withdrawn at any time prior to the imposition of sentence, Wash.Rev.Code § 10.40.175, State v. Farmer, *supra*, if the trial judge in his discretion finds that the ends of justice will be served, State v. Shannon, 60 Wash.2d 883, 376 P.2d 646 (1962). Without undertaking to catalog the various situations in which a lawyer could be of substantial assistance to a defendant in such a case, it can be reiterated that a plea of guilty might well be improperly obtained by the promise to have a defendant placed on the very probation the revocation of which furnishes the occasion for desiring to withdraw the plea. An uncounseled defendant might very likely be unaware of this opportunity" (389 U.S. at 135–136, 88 S.Ct. at 257–258).

None of these considerations noted by the Supreme Court in *Mempa* are found here.

The other decisions relied upon by appellant differ in legally significant respects from the case before us and are therefore neither controlling nor persuasive. For instance, the Board of Parole was not here confronted with the necessity of making new findings as the basis for imposing a new sentence, new deprivations, or new hardships for which minimum due process would be required. See, e. g., Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (defendant must be represented by counsel where court was required to find that he "constitutes a threat of bodily harm to the public" in order to impose sentence under a statute different from that to which he pleaded guilty); United States ex rel. Schuster v. Herold, 410 F.2d 1071 (2d Cir. 1969) (Equal Protection Clause requires that before prisoner may be found insane and transferred to a mental institution where he would be subjected to "substantial deprivations, hardships and indignities" and loss of opportunity for parole, he be accorded the same due process to which a civilian is entitled); Shone v. Maine, 406 F.2d 844 (1st Cir. 1969) (Equal Protection Clause required due process in order to find juvenile offender "incorrigible" as basis for transferring him from Boys Training Center to Men's Correctional Center). Nor is this the case where the state, in an adversary proceeding, is seeking to deprive a person of liberty, property or a status presently enjoyed. See, e. g., Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir. 1961) (expulsion from tax-supported college); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (termination of welfare payments); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) (adjudication as juvenile delinquent and commitment); In re Ruffalo, 390 U.S.

544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (disbarment).

■ In the last analysis the Board's determination as to whether a prisoner is a good parole risk represents an aspect of state prison discipline, not an adjudication of rights in an adversary proceeding. Rose v. Haskins, 388 F.2d 91 (6th Cir. 1968). If the federal judiciary, in the name of the Due Process Clause, undertook the supervision of such disciplinary procedures, it would become inextricably involved, upon the suits that would inevitably follow, in non-legal, non-judicial determinations for which it is not equipped by training or experience. Although appellant's counsel, upon oral argument, indicated that initially he seeks only rudimentary due process in the form of providing that counsel be permitted to "assist" the Board, we have no doubt that this would be followed by demands (by appellant or others) for the full panoply of procedural rights demanded in the complaint, including cross-examination of doctors, psychiatrists, case workers, prison officials, and the like. We believe that to embark upon such a course would be unwise.

The judgment of the district court is affirmed.

ANDERSON, Circuit Judge (concurring):

I concur in all respects in Judge Mansfield's excellent opinion insofar as it deals with the facts of the case before us. If, however, the discussion of what a petitioner might claim or contend if the case were one of parole *revocation,* rather than one of *granting parole,* is interpreted to imply that in such a case this court would be inclined to hold that constitutional due process would require a trial-type hearing, with the right to counsel, confrontation with witnesses, the right to subpoena witnesses, etc., I am not prepared to agree. Recognition of such a right would completely alter the nature of the parole system and the functions of parole officers and the Parole Board. Until Congress by appropriate legislation changes the character and purpose of parole and the parole system, the hearing on revocation should not be turned into an adversary proceeding. This is not to say that the Board is entitled to act arbitrarily or base its decisions on careless or token investigation or on hunch or whimsey. The hearing should be fair and based upon a thorough investigation, including a searching inquiry into the parolee's own version of the pertinent facts. See United States ex rel. McCreary v. Kenton, 190 F.Supp. 689, 691 (D.Conn.1960); also see United States ex rel. Buono v. Kenton, 287 F.2d 534, 536 (2 Cir. 1961); Washington v. Hagan, 287 F.2d 332, 333–334 (3 Cir. 1960).

FEINBERG, Circuit Judge (dissenting):

I respectfully dissent.

The basic issue before us is whether a state prisoner is constitutionally entitled to the services of retained counsel at a parole release hearing. I reject the view that a prisoner has no greater rights than an alien in a foreign land, see pp. 408–409 of the majority opinion. I would hold that the Due Process Clause of the Fourteenth Amendment requires that a prisoner be allowed to have the assistance of retained counsel at his parole release hearing.

I.

Before discussing the applicable law, it is instructive to examine precisely what has happened to appellant in this case. He is now 41 years old and has been in prison continuously since he was 18, with a brief exception from August 1963, when he was released on parole, to March 1965, when he was apprehended pursuant to a parole violation warrant. Appellant is presently serving his original sentence of 20 years to life, imposed in May 1947 upon a plea of guilty to murder in the second degree. Therefore, he will remain in prison for the rest of his life unless the New York State Board of Parole decides to release him. In May 1965, he appeared before

the Board of Parole and admitted, *inter alia,* that during his brief return to society he had consorted with individuals having a criminal record and that he had given misleading information to his parole officer. Parole was revoked upon these admissions and appellant was ruled ineligible for reconsideration of his parole qualifications for at least two years. Since then, appellant has received a few interviews with the Board at intervals ranging from one to two years. On each occasion he has been summarily denied release on parole and barred from reconsideration until the next interview. Each interview was quite brief. At no time was appellant given an opportunity to have the assistance of counsel, although recently he has apparently had counsel willing and anxious to assist him. We are told that appellant's next meeting with the Board is scheduled for June 1971.

Appellant sought relief in the state courts and then filed this suit, attacking the procedure before the Board and particularly the prohibition of counsel. Since only declaratory relief was sought, no three-judge court under 28 U.S.C. § 2881 was asked for or required.[1] The district judge felt compelled to grant the State's motion for summary judgment, although indicating that if he "were writing on a *tabula rasa,*" his disposition might not be the same. This appeal followed.

## II.

To view the primary issue before us in proper perspective, one must envision a statute which specifically prohibits the assistance of counsel at the sentencing in a criminal case. For that is similar to what New York State has done here. The Rules and Regulations of the New York State Board of Parole provide as follows:

> Neither the inmate's attorney nor any other party will be permitted to attend or speak in person in the inmate's behalf or against him at any meeting of the Board of Parole at which the inmate's release on parole is being considered. The board shall have complete discretion with respect to the presence of any other persons at such hearings.

9 New York Codes, Rules & Regulations § 155.9. Thus, we are not dealing with the question whether counsel must be appointed at a parole release hearing. The issue is whether all counsel can be banned. Appellant claims that the quoted Rule denies him procedural due process.[2] His most powerful argument proceeds from two assumptions: that a parole release proceeding is essentially a continuation of sentencing, and that at sentencing he would be entitled to the assistance of retained counsel.

Appellant's basic proposition is that a parole release hearing is part of the entire process of rehabilitation and correction which begins with a finding of guilt, goes on to the fixing of an appropriate sentence, and ends with the expiration of that sentence. Certainly, there is nothing startling about this view. The criminal process does not end abruptly with the clang of the prison gate; society has a pervading interest in what happens to the prisoner thereafter.[3] Moreover, modern penological attitudes and statutes which reflect them underscore the unbroken nature of the

---

1. Another action in the district court raising substantially the same issues did seek injunctive relief and the convening of a three-judge court. An appeal is presently pending in this court, Docket No. 34300, from the district court's refusal to convene, a statutory court because the constitutional issue was insubstantial. Lewis v. Rockefeller, 305 F.Supp. 258 (S.D.N.Y. 1969).

2. Appellant also advances an equal protection argument. See note 18, *infra.*

3. See Burger, No Man is an Island, 56 A.B.A.J. 325 (1970); R. Dawson, Sentencing 3 (1969).

process.[4] It is clearly the trend to divide responsibility for sentencing more and more between the judge who heard the trial or the guilty plea and those persons who thereafter observe the defendant in prison. Thus, in recent decades, Congress and state legislatures have given judges great flexibility in sentencing. A judge can now make merely the initial determination that a defendant should go to prison, fix an outside limit on incarceration and leave the length of custody to be determined by a Parole Board.[5] Also, the judge can instruct the board to consider parole eligibility sooner than it ordinarily would.[6] Moreover, in some situations, a judge may sentence a defendant to prison for an indeterminate period, with a Parole Board later deciding when, if ever, the prisoner's return to society is advisable.[7]

Obviously, then, the responsibility for sentencing is increasingly being shared, with Parole Boards playing a greater and greater part. Moreover, this division of responsibility is explicitly recognized. Thus, the Senate Report on the bill which is now 18 U.S.C. § 4208 stated that the new sentencing procedures "would permit the court, at its discretion, to share with the executive branch the responsibility for determining how long a prisoner should actually serve." [8] Similarly, the Task Force Report on Corrections (1967), prepared for the President's Commission on Law Enforcement and Administration of Justice concluded (at p. 86):

> Parole legislation involves essentially a delegation of sentencing power to the parole board.

For the defendant before a sentencing judge or a prisoner before the Parole Board, the stakes are exactly the same: on the one hand, freedom to remain in or to return to society and on the other, incarceration in prison, in this case possibly for life. In New York, the standards for the judge and the Parole Board in making that determination are remarkably similar.[9] Indeed, the Correction Law of the State of New York refers to the Board's role in a parole release proceeding as a "judicial function." [10] If the functions of judge and Parole Board under these arrangements are viewed objectively, the parole release proceeding in New York, as elsewhere, does seem in practical effect to be an extension of the sentencing process, and I accept that proposition. See Note, Due Process: The Right to Counsel in Parole Release Hearings, 54 Iowa L.Rev. 497, 505 (1968).

This brings us to appellant's second assumption, which concerns those rights guaranteed at sentencing. In Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), the Supreme Court granted a writ of habeas corpus to a state prisoner because of the "require-

---

4. The State of New York apparently agrees. In its brief in this court in Lewis v. Rockefeller, Docket No. 34300, referred to in note 1, the State conceded at p. 19:
   It must be remembered that in imposing a sentence on a criminal defendant, a trial court is determining that an individual must be supervised or confined, for the good of the community or for his own protection. At the time of sentence, the court establishes the maximum period of custody during which the correction and rehabilitation of the defendant is expected to take place. The key to the rehabilitative process is the use of various levels of custody in the correctional treatment program.
   Parole is one level or form of custody * * * it is still part of the correctional process. * * * *

5. 18 U.S.C. §§ 4201, 4208; N.Y.Penal L. § 70.40.

6. 18 U.S.C. § 4208(a) (1).

7. See, e. g., 19 Penn.Stat.Ann. §§ 1166, 1172; 39 Colo.Rev.Stat. §§ 19–1, 6–8.

8. S.Rep.No.2013, 85th Cong., 2d Sess. (1958), 1958 U.S.Code Cong. & Adm. News, pp. 3891, 3892.

9. Compare N.Y.Penal L. §§ 65.00 and 65.05, with N.Y.Corr.L. § 213.

10. N.Y.Corr.L. § 212.

ment of fair play which absence of counsel [at sentencing] withheld from this prisoner." Less than three years ago, the Court unanimously stated in Mempa v. Rhay, 389 U.S. 128, 134, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967):

> In particular, Townsend v. Burke, *supra,* illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to counsel applies at sentencing.[3] Many

3. See Kadish, The Advocate and the Expert—Counsel in the Peno-Correctional Process, 45 Minn.L.Rev. 803, 806 (1961).

> lower courts have concluded that the Sixth Amendment right to counsel extends to sentencing in federal cases.[4]

4. *E. g.,* Martin v. United States, 182 F. 2d 225 (C.A. 5th Cir. 1950); McKinney v. United States, 93 U.S.App.D.C. 222, 208 F.2d 844 (1953); Nunley v. United States, 283 F.2d 651 (C.A. 10th Cir. 1960).

Thereafter, in McConnell v. Rhay, 393 U.S. 2, 4, 89 S.Ct. 32, 34, 21 L.Ed.2d 2 (1968) (per curiam), the Court made clear that "[t]he right to counsel at sentencing must * * * be treated like the right to counsel at other stages of adjudication." I conclude, therefore, that appellant's minor premise is sound and that at a judicial sentencing the Constitution requires the presence of counsel. See also United States ex rel. Diblin v. Follette, 418 F.2d 408 (2d Cir. 1969).

This, of course, hardly ends the case; it is only the beginning of the necessary inquiry. Appellant in fact claims as a constitutional right more procedural protection than he is now constitutionally entitled to at a judicial sentencing, e. g., confrontation of witnesses. Moreover, even though a parole release proceeding is in practical effect an extension of the sentencing process, it does not follow that it must be treated in exactly the same way. Appellant in effect concedes this by foregoing reliance on the right to counsel guaranteed by the Sixth Amendment as applied to the states through the Due Process Clause of the Fourteenth Amendment. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). He relies instead on the more general requirements of procedural due process, citing principally Goldberg v. Kelly, 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970); Mempa v. Rhay, *supra,* and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). The Supreme Court has instructed us that in this context due process is

> an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. * * * Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding, are all considerations which must be taken into account.

Hannah v. Larche, 363 U.S. 420, 442, 80 S.Ct. 1502, 1514, 4 L.Ed.2d 1307 (1960). See also Goldberg v. Kelly, *supra,* 397 U.S. at 263, 90 S.Ct. 1011; Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Accordingly, I turn to application of these general criteria to a parole release hearing, focusing primarily on the right to assistance of retained counsel.

The most obvious consideration is that for the prisoner the stakes could hardly be higher. Since the Parole Board has the power to determine whether appellant must remain in prison for the rest of his life, he has an obvious interest in having his case for parole presented effectively. Appellant is a man of little education and the transcripts of the parole release proceedings reveal, as might be expected, his inability to express himself clearly and to present his justifications for parole. Apparently the basic reason for the Board's refusal to grant parole release has been appellant's admission of "consorting," which resulted in revocation of parole in 1965. The attempts of appellant, alone in the room with the Board, to persuade its members

that he had made a mistake which would not be repeated reflect his own inadequacies and his concern over antagonizing the Board. It requires little imagination to conclude that a trained lawyer could have materially aided both appellant and the Board, unless the inaccurate and unworthy assumption is made that lawyers generally do more harm than good.[11] It makes little difference whether present parole personnel are seen as sincere men earnestly doing the best they can in a difficult job,[12] or are regarded less favorably.[13] On either view, a Parole Board should be interested in such relevant facts as job availability for a prisoner, his family situation, and his progress in self-education. The ability to marshal such facts and to uncover unfairness that a trained lawyer possesses would improve, not injure, the parole release hearing.[14]

The majority opinion suggests that the "administrative burden * * * would be enormously increased" by allowing counsel at a parole release hearing. But some states already do so,[15] and apparently there has been no paralysis of their systems. Nor is it necessary to assume that allowing retained counsel will carry with it an exactly corresponding obligation to appoint counsel for all indigent potential parolees, thus flooding the courts with demands for appointment. While there is force to the equal protection claim, that presents a different question. Thus, the Supreme Court in Chandler v. Fretag, 348 U.S. 3, 9, 75 S.Ct. 1, 5, 99 L.Ed. 4 (1954), which recognized the right to counsel at

an "habitual criminal" sentencing, said: "Regardless of whether petitioner would have been entitled to the appointment of counsel, his right to be heard through his own counsel was unqualified." Similarly, the Task Force Report on Corrections, *supra,* at 86, notes this distinction and states that "there seems no legitimate reason for limiting representation by retained counsel at parole hearings." As the Supreme Court observed in Johnson v. Avery, 393 U.S. 483, 489–490, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), there are a number of less than perfect, but acceptable, solutions to the problem of providing counsel to persons deprived of their liberty, outside the hard core of criminal prosecution itself. One solution, which would go far to ameliorating any fears of enormous administrative burdens, would be to appoint counsel only for those prisoners who have been denied parole at their first opportunity therefor.[16] Finally, allowing retained counsel at a parole release hearing does not mean that he should be allowed to convert it into a trial any more than counsel could achieve such a result at a sentencing in court.

In short, considering the broad discretion wielded by the Parole Board, the virtually unfettered procedure, the gravity of the consequences to the prisoner, his inability to present his case as well as a lawyer could, the sentencing function of the Board, and the possible burdens of allowing the assistance of retained counsel, appellant's legal position is persuasive. I conclude that the traditional procedural due process criteria suggest that a prisoner at a parole re-

11. The majority opinion disavows such an assumption. See note 2 to its opinion.

12. See Jackson, Parole Board, 69 Life, July 10, 1970, at 54.

13. W. Gaylin, In the Service of Their Country, War Resisters in Prison, 332–42 (1970).

14. See the discussion in Kadish, The Advocate and the Expert—Counsel in the Peno-Correctional Process, 45 Minn.L.

Rev. 803, 829–30. See also Task Force Report on Corrections, *supra,* at 86.

15. See note 1 of the majority opinion.

16. Statistics show that the great majority of initial parole release applications are granted. E. g., in New York in 1967, 2,743 out of 4,278, or approximately 65%, of the persons appearing for parole for the first time were granted it. 38th Annual Report, Division of Parole, Table 9, p. 222.

lease hearing should be entitled to the services of retained counsel.

Turning from these general considerations to the reported cases, so far as I can tell the precedents do not compel us to deny such assistance of counsel. There is authority suggesting that result, which is discussed below, but we are cited to no case in the Supreme Court or in this court which now requires us to take that course.[17] On the other hand, there are recent decisions in the Supreme Court and in the courts of appeals which do lend strong support to appellant's position.

In Mempa v. Rhay, *supra,* the Supreme Court held unanimously that counsel was constitutionally required at a hearing which combined probation revocation and deferred sentencing. After referring, as indicated above, to the right to counsel at the usual sentencing hearing, the Court went on to note that (389 U.S. at 135, 88 S.Ct. at 257):

> It is true that sentencing in Washington offers fewer opportunities for the exercise of judicial discretion than in many other jurisdictions. The applicable statute requires the trial judge in all cases to sentence the convicted person to the maximum term provided by law for the offense of which he was convicted. Wash.Rev.Code § 9.-95.010. The actual determination of the length of time to be served is to be made by the Board of Prison Terms and Paroles within six months after the convicted person is admitted to prison. Wash.Rev.Code § 9.95.040.

Nevertheless, the Court held that counsel was necessary because the sentencing judge and the prosecutor furnish the Washington Board of Prison Terms and Paroles with a recommendation as to the length of time the defendant should serve, and the Board "places considerable weight on these recommendations."

The Court then stated (*id.,* 88 S.Ct. at 257):

> Obviously to the extent such recommendations are influential in determining the resulting sentence, the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sentence is apparent.

I do not suggest that *Mempa* is either controlling or indistinguishable. Obviously, it is neither. Emphasizing that more was involved than sentencing, the Court observed that "certain legal rights may be lost if not exercised" at the hearing in court, e. g., the right to appeal or to withdraw a prior plea of guilty. Moreover, the question in *Mempa* was the right to counsel at the judicial proceeding, "whether it be labeled a revocation of probation or a deferred sentence," 389 U.S. at 137, 88 S.Ct. at 258, not at a later hearing before the Board, the question before us now. Yet the case indicates that the Constitution requires counsel at all sentencing proceedings, and that "sentencing" is not confined to what a judge first prescribes after trial. In both *Mempa* and the companion case, Walkling v. Board of Paroles, the defendant had first been sentenced to a term of probation to begin after serving a term of imprisonment and after making restitution to the defendant's victim. *Id.* at 130, 132, 88 S.Ct. 254. The right to counsel issue was raised at a second sentencing hearing, which took place months (as in *Mempa*) or years (as in *Walkling*) later. The same was true in McConnell v. Rhay, *supra,* which held *Mempa* retroactive. To the extent that *Mempa* emphasized the need for counsel in sentencing by a judge presumably trained in factfinding and operating within a structure of traditional objectivity and impartiali-

---

17. The majority, in note 3, cites Escoe v. Zerbst, 295 U.S. 490, 492–493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935), and Jay v. Boyd, 351 U.S. 345, 354, 76 S.Ct. 919, 100 L.Ed. 1242 (1956). Neither is a direct holding on the issue raised here, and the "right-privilege" dictum in each would seem undermined, if not overruled, by Mempa v. Rhay, *supra,* and Goldberg v. Kelly, *supra.*

ty, one may ask whether counsel is not *a fortiori* required at a sentencing hearing by a Parole Board. Moreover, because the role of the trial judge in *Mempa* was so limited (he could only impose the "maximum term"), the true role of counsel was to produce facts for the future use of the Parole Board. Accordingly, I believe that *Mempa* supports appellant's assertion that he is entitled to the services of counsel before the New York Parole Board for the purpose of "in general aiding and assisting the defendant to present his case as to sentence." *Mempa, supra,* 389 U.S. at 135, 88 S.Ct. at 257. Cf. Hewett v. North Carolina, 415 F.2d 1316, 1322 (4th Cir. 1969), and Ashworth v. United States, 391 F.2d 245 (6th Cir. 1968) (per curiam), both holding that because of *Mempa,* counsel is now required at revocation of probation proceedings. See also Cohen, Sentencing, Probation, and the Rehabilitative Ideal: The View from Mempa v. Rhay, 47 Tex.L.Rev. 1 (1968).

Moreover, there are other recent decisions that support appellant's position. In Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court struck down a prison regulation barring inmates from furnishing assistance to other prisoners in the preparation of petitions for post-conviction relief. In Goldberg v. Kelly, 397 U.S. 254. 270, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Court held that a welfare recipient is entitled to certain due process procedural protections before termination of benefits, including the right to representation by retained counsel at a hearing. Similarly, the meaning of constitutional due process has been expanded in other analogous areas. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), made clear that counsel was required in a juvenile proceeding. Cf. Kent v. United States, 383 U.S.

541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967), the Court held that where the basis for sentencing as a sexual offender was not the finding of guilt, but a new finding of fact, e. g., that the defendant, if at large, constituted a threat of bodily harm to the community, due process required that an adversary hearing be held. In United States ex rel. Schuster v. Herold, 410 F.2d 1071, 1073 (2d Cir. 1969), this court held that before a prisoner may be transferred to a state institution for insane criminals, "he must be afforded substantially the same procedural safeguards as are provided in civil commitment proceedings." In reaching that conclusion, we relied heavily on another recent Supreme Court decision, Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). In Shone v. Maine, 406 F.2d 844 (1st Cir.), vacated as moot, 396 U.S. 6, 90 S.Ct. 25, 24 L.Ed.2d 6 (1969), the court extended due process procedural protections to juvenile offenders about to be transferred from a boys' training center to a men's correctional center.

Once again, I do not suggest that these decisions are indistinguishable. They did not involve parole release proceedings; moreover, some of them relied in whole or in part on a constitutional theory—denial of equal protection of the laws—which does not so obviously apply here, since the Parole Board regulation bans counsel for rich and poor alike.[18] The majority opinion attempts to distinguish some of these cases on the ground that they involve an "interest * * * presently enjoyed," and appellant does not now "enjoy freedom of movement beyond the prison walls." With all respect, I submit that the distinction is unsound; what is most significant is the type of "interest" involved and the

18. Query, however, whether other theories of denial of equal protection may not be invoked; e. g., is a prisoner whose sentence is effectively determined by a Parole Board entitled to less assistance of counsel than a defendant whose sentence is determined by a judge, or a prisoner about to be transferred to a hospital for the criminally insane, cf. United States ex rel. Schuster v. Herold, *supra?* See appellant's brief, pp. 33–36.

potential effect of the hearing upon it, not whether the "interest" is already held. The decisions discussed above persuade me that when the immediate stakes of a hearing are imprisonment or freedom, due process commands that a prisoner be allowed at least to have the assistance of retained counsel.

The majority points out that a number of other circuits have, at various times in the more or less recent past, stated that counsel is not required as a constitutional matter in parole revocation procedures and thus *a fortiori* the Constitution could not require counsel in parole release hearings. Three of the most recent cases cited, United States ex rel. Halprin v. Parker, 418 F.2d 313 (3d Cir. 1969); Cotner v. United States, 409 F.2d 853 (10th Cir. 1969); and Earnest v. Willingham, 406 F.2d 681 (10th Cir. 1969), deal with the obligation to furnish *appointed* counsel to indigents in revocation proceedings. Except for *Earnest,* the cases do not discuss whether retained counsel can constitutionally be banned, and *Earnest* is based upon a right-privilege distinction which was undermined by Goldberg v. Kelly, *supra.* See note 17 *supra.*

Of the remaining circuit court cases cited, only three were decided after the recent decisions of the Supreme Court in *Mempa* and all preceded Goldberg v. Kelly. Of those three, only the opinion of the Tenth Circuit in Williams v. Patterson, 389 F.2d 374 (1968), and the opinion of the Sixth Circuit in Rose v. Haskins, 388 F.2d 91 (Celebrezze, J., dissenting), cert. denied, 392 U.S. 946, 88 S.Ct. 2300, 20 L.Ed.2d 1408 (1968), deal with *Mempa*; with all respect, I disagree with the distinction of *Mempa* in those cases (and in Briguglio v. New York State Board of Parole, 24 N.Y.2d 21, 298 N.Y.S.2d 704 (1969), also relied on by the majority). *Mempa* was regarded as having more substantial effect in the later Sixth Circuit decision in Ashworth v. United States, 391 F.2d 245 (1968), and in a very recent decision of the Fourth Circuit. See Hewett v. North Carolina, 415 F.2d 1316 (1969).

In any event, I do not claim that the question before us can be decided by a tally of the cases. I suggest only that the issue whether retained counsel may be banned at a parole release proceeding is at this time an open one in this circuit and in the Supreme Court, and that the most recent decisions of the Court support the view that such a rule offends procedural due process. Accordingly, I would hold that appellant at his next parole release interview cannot be denied such assistance.

### III.

Appellant's complaint sought additional relief, including the right "to cross-examination and to present favorable evidence and compel the attendance of favorable witnesses," notice of charges, and specification of grounds upon which the parole release determination was based. At oral argument, most—and perhaps all—of these additional demands were apparently withdrawn or waived. Therefore, extended consideration of these alleged rights is out of place at this time. My basic approach would be to afford appellant no more in the way of these procedural protections than he is constitutionally entitled to at a sentencing proceeding before a judge, and apparently he has received that.

In sum: I conclude that minimum procedural due process requires New York to allow appellant the assistance of retained counsel at a parole release hearing. Because the majority opinion denies that right, I dissent.