Hamilton Doherty, J.
By order to show cause granted May 13, 1974, the petitioner, at that time an inmate at Attica *362 Correctional Facility at Attica, Wyoming County, New York, and presently an inmate ;at the Albion Correctional (Facility at Albion, Orleans ¡County, New York, brought two proceedings seeking parole release and other relief. One proceeding sought relief .under ¡article 78 of the CPLR declaring the policies and/or practices ¡of the respondents ¡violative of the petitioner’s constitutionally protected rights, directing his immediate release on parole, alternatively directing the petitioner’s return to the next possible parole application hearing, alternatively voiding the transfer of the petitioner from Alhion to Attica as violative of law, expunging any records of or mention of tibe said transfer from Albion to Attica, ’and granting compensatory and punitive damages ;as a result of such transfer.
By the same petition the petitioner seeks habeas corpus relief under article 70 of the CPLR. The petition does not distinguish as to (which relief is sought ¡under which article of the CPLR.
By ¡order of the ¡Special ¡Term of Supreme 'Court in Erie County entered October 15, 1974 the article 78 proceeding was dismissed as untimely brought and the habeas corpus proceeding was transferred to. Wyoming County for determination, on the grounds that the petitioner was at that time believed to be an inmate of the Attica Correctional Facility in ,sueh county. It appears that by tihe time proceedings were received in Wyoming County the petitioner had been transferred back to Albion in Orleans County, and by order of the Wyoming County Court dated October 24,1974 and filed October 30,1974, such proceeding was transferred to Orleans County Court for disposition.
A hearing was scheduled before tihe undersigned ¡on November 18,1974. Upon the hearing no testimony was offered but counsel for each side ¡arguéd from the facts set forth in the. petition and return. It appears, there is no dispute about the facts. However, there is .some difference of opinion ,a& to the law to he applied to the facts and tihe result ¡which .justice dictates.
The. defendants are respectively the ¡State Commissioner of Correction (Preiser), the Chairman of the State Parole Department (Regan), ¡the ¡Superintendent of the Albion Correctional Facility (Reid), and the Superintendent .of the Attica Correctional Facility (Smith).
Except as hereinafter set forth tihe People.don’t dispute the facts alleged in the petition which are .briefly as follows: On Márch 15, 1971 the defendant, upon ¡his plea of ¡guilty to the crime of assault in the second degree was sentenced ¡by the Madison County Court to an indeterminate sentence of imprisonment not to exceed seven years and was delivered to tihje Recep *363 tion Center at Elmira, New York. At .approximately the same time he received a maximum three-year term of imprisonment from the Oneida County Court for the crime of burglary in the third degree, to run concurrently with the term imposed by Madison County
After spending approximately 27 months in the reformatory at Elmira, the defendant was transferred to the Albion Correctional Facility .(hereinafter referred to as Albion), at One time known as the Albion Community Preparation Center, a minimum security institution to which are transferred inmates within the correctional system who are within a year of their scheduled release date.
A part of the program at Albion is a program of work release, whereby the inmates can live at the correctional facility but work in the surrounding communities at regular jobs and for regular pay. The defendant was so employed in the community near Albion.
On October 1,1978 the petitioner was given a parole release hearing and was advised that he would be released on parole on November 8,1973.
On. October .13, 1978 the petitioner was given a 12-hour furlough to secure a place to live upon his release on parole. During the period of his furlough he was arrested and charged with the violation of harassment (Penal Law, § 240.25) and the crime of aggravated harassment (Penal Law, § 240.30). He was arraigned in Town ¡Court in the Town of Murray and both charges were adjourned in contemplation of dismissal pursuant to OPL 170.55.
The petitioner was returned to Albion where he was placed in solitary confinement and on October 15,1973 was called before the “ Adjustment Committee ” (apparently a penological euphemism for discipline committee). He appeared again . before such committee on October 17 and as a result of such appearance was accused of wrongdoing, the accusations were sustained by such committee, the petitioner was removed from the work release program and confined to the correctional facility grounds.
On October 29 the petitioner appeared before the Parole Board at a meeting at Albion. The board rescinded its prior determination setting the parole date of November 8, and determined that the petitioner should be held for an additional year to reappear before such board in November, 1974. On October 30 the petitioner was transferred to Attica Correctional Facility at Attica, New York (hereinafter referred to as Attica). He *364 thereafter .wrote to the defendants Reid and Regan requesting that he ibe transferred back to Albion.
Copies of letters from both Reid and Regan are attached • to the petition. Reid’s letter in substance states that upon the-information he had, all of which is obviously hearsay, he would not change his decision transferring the petitioner to Attica, and that any decision relative to his transfer back to Albion was not up to him ¡but up to the institutional program committee at Attica and the division of classification and movement in Albany.
Regan’s letter refers to the six months’ adjournment in contemplation of dismissal as a sentence, which it is not (since the motion for such adjournment must precede a plea of guilty, and it is by its own definition not a sentence but an adjournment, GPL 170.55) and points out that the Board of Parole might have been much harsher than it was.
The record of the hearing of October 29, 1973 is included as a part of the respondent’s return, and it is set forth here in full, simply to show the lack of fairness of the whole proceeding.
CASE of: BRIO TODD GODFREY ALP-238
COMM, gilbridb:
Q. Erie Godfrey?
A. Yes, sir.
Q. Godfrey, you were before the board last month.
A. Yes, sir.
Q. At that time, you were granted an open date for a parole program.
A. Yes, sir.
Q. And it was brought to our attention some things that happened, so that you should be reconsidered, or that decision should be reconsidered. Are you aware what those things are?
A. Yes, sir.
Q. What do you have to say in reference to them?
A. The warrants I had. I don’t know if they said anything about that.
Q. You were talking about the charge of aggravated harassment ?
A. Yes, sir. They were dismissed in court.
Q. You were released on six months’ contemplation of dismissal.
A. They told me they were dismissed.
Q. They will be dismissed, if you don’t get into any more difficulty for six months, which is something else. It’s indicated you were released for one day. I think that as the 13th of October on a temporary release situation to find yourself a residence,
A. Yes, sir.
Q. And a number of things happened, and you ended up with the following arrests; and one of them was drinking to excess. At least that’s the information we have, along with events that’s indicated that brought about the warrants for your arrest — the threatening of this young girl.
A. I didn’t threaten her. I asked her not to call me, just to leave me alone. She would call up on my job, and I asked her to leave me alone.
*365 Q. You know, that’s contrary to what she says. We have the information what she said, and we are hearing now what you have to say. There’s no indication she was calling your job.
A. She was, and she would foul up my job. She came to my place of employment.
Q. For what purpose?
A. She wouldn’t leave me alone. I was supposed to go out with her and I found out what kind of girl she was. She was only 16.
Q. When was it you were going out with her?
A. When I got out on parole.
Q. You were going to meet her on some bridge.
A. No, sir.
Q. But another girl came in her place. Do you know anything about that?
A. Yes, sir.
Q. Is that true?
A. Yes, sir.
Q. Would that indicate she didn’t want to go out with you?
A. She didn’t go because her boyfriend was at her house.
Q. Was her boyfriend there the night you stopped, on the 13th?
A. No, sir.
Q. She said she didn’t want to go with you then.
A. I didn’t ask her to go out that night.
Q. What was the purpose of the telephone calls ?
A. To leave me alone.
Q. Why was it necessary to go to her house?
A. I was going by anyway, so I stopped.
Q. I don’t believe you. Considerable drinking was going on, on that day, wasn’t there?
A. Yes, sir.
Q. Anything further you want to bring to our attention for our consideration?
A. No, sir.
Q. Are you sure?
A. Yes, sir.
Q. That’s all.
DECISION: RECOMMENDED THAT DECISION OE OCTOBER BOARD 1973 RESCINDED AND HE IS NOW HELD ONE YEAR, EOR THE NOVEMBER 1974 BOARD, WITH A PSYCHIATRIC REPORT REQUESTED.
ALBION CORRECTIONAL FACILITY — OCTOBER 29, 1973
GILBREDB, RIVERA, DEAN TJL/ewb.
Established legal precedent seems satisfactorily to hold that a prisoner in a State or Federal institution is entitled to an attorney in .connection ¡with -a parole revocation hearing (People ex rel. Menechino v. Warden, Green Haven State Prison, 27 N Y 2d 376; Morrissey v. Brewer, 408 U. S. 471; Gagnon v. Scarpelli, 411 U. S. 778). It seems likewise ¡well established that a prisoner is not entitled to counsel at a parole release hearing, held by the parole board while a .prisoner is still confined. (Menechino v. Oswald, 430 F. 2d 403; Briguglio v. New York State Bd. of Parole, 24 N Y 2d 21.)
*366 It has also been held that habeas corpus is a proper proceeding through.¡which to test the legality of the denial of due process at a parole revocation hearing (People ex rel. Warren v. Mancusi, 40 A D 2d 279).
•The present ease falls between the extremes of the above cases, in that while the petitioner here had had his parole release hearing, he had not been paroled, and he raises the question of Ms right to counsel as a matter of constitutional due process at the hearing wMch rescinded his parole release date.
In reaching its .determination in Menechino v. Oswald (430 F. 2d 403, supra) the ¡Second ¡Circuit Court of Appeals explained the distinction between the parole release hearing and the parole revocation hearing ¡as follows (p. 407): ¡“In the present case some of the essential conditions for requiring procedural due process as a matter of constitutional right are ¡missing-. In the first place the Board of Parole is not appellant’s adversary. On the contrary the Board has an identity ¡of interest .with Mm to the extent that it is seeking to encourage and foster his rehabilitation and readjustment to society.”
In Goldberg v. Kelly (397 U. S. 254, 270): £< £ The right to be heard would be, in many cases, of little avail if it did not comprehend the .right to be heard by counsel. ’ Powell v. Alabama, 287 U. S. 45, 68-69 (1932). We do not say that counsel must be provided at the pre-termination hearing, but only that the recipient must be allowed to retain an attorney if he so desires. Counsel can help delineate the issues, present the factual contentions in an orderly manner, conduct cross-examination, and generally ¡safeguard the interest ¡of the recipient.”
Mr. Justice Brenkait, concurring in the result on Morrissey v. Brewer, 408 U. S. 471, supra) took issue with the statement of the majority that it did not then reach or decide the question whether the parolee is entitled to..the assistance ¡of retained counsel or to appointed counsel if he is indigent, said (p. 491): "Goldberg v. Kelly * * * nonetheless plainly dictates that he at least£ must be ¡allowed to retain ¡an attorney if he so desires * * * The only question open under our precedents is whether counsel must ¡be furnished ¡the parolee if he is indigent.”
In ia recently decided case, Batchelder v. Kenton (383 F. Supp. 299) decided February 5, 1974 in the United ¡States Disrict ¡Court for the Central District of ¡California the court considered a question very similar to the question involved here. The petitioner there was likewise -given a parole release date wMch was revoked (p. 301) upon the basis of ££ confidential information ”, ¡and £ £ investigative reports ”, upon which the *367 Bureau of Prisons filed an incident report, and following a review hearing at which the petitioner was denied the right to confront or cross-examine his ¡accusers or the right to counsel, cancelled his release date and directed that he be required to serve the balance of his sentence. The District Court there found that, as in the current situation the transfer to a more secure institution constituted a grievous loss of substantial rights, as did the withdrawal of his parole release status. The court (p. 302) there likened the board’s decision not to honor the release date to the parole revocation situation in Morrissey v. Brewer (408 U. S. 471, supra) in having “ two analytically distinct components * * * the first is a factual question as to whether the prisoner did in fact violate the prison regulations and was trafficking in narcotics, and the second (nonfactual) as to whether the potential parolee should consequently be further detained in prison for his program of rehabiltation. It is the first component with which the Court in those two cases was concerned, as this court is in the instant case. ’ ’
The court there held (p. 302) that the defendant was entitled to counsel at the hearing relative to the first of such elements since “ the major focus of the inquiry is a factual one into an alleged serious infraction, and because the purpose of requiring a hearing is to i afford adequate confrontation and cross-examination of the prisoner’s accusers ”.
Applying the analyses ,set forth in the above cases to G-odfrey’s situation, it becomes apparent that the deprivation of his rights and privileges as an inmate at Albion, as opposed to Attica, together with his status as a potential parolee, constitutes such “ grievous loss ” that due process requires that he be permitted to have counsel with him at such hearing.
The petitioner is therefore entitled, in addition to the rights guarateed him by the criteria set forth in People ex rel. Warren v. Mancusi (40 A D 2d 279), to the right to have counsel of his choice.
Since this petitioner has already secured counsel, the question of assignment of counsel to indigents is not before this court. The Supreme iCourt has previously declined to decide it in similar situations (Morrissey v. Brewer, supra). Since this is a civil proceeding, the provisions for counsel for indigents made with respect to criminal charges are not applicable and no similar provisions appear to toe presently available in civil matters. That question is therefore left for future decision.
In the course of argument, counsel for the People moved the court to issue an order directing:
*368 1. That at .the next meeting ,of the Parole Board the petitioner be given a parole release hearing.
2. That such hearing should be held within the criteria set forth in People ex rel. Warren v. Mancusi (40 A D 2d ,279), and
3. That the Parole Board set .forth in writing the reason for its decision.
The People therefore concede the inadequacy of the alleged hearing of October 29 ,at which the petitioner’s parole date was rescinded and he was held for the November, 4974 board.
The motion of the People therefore is granted, as is the prayer for relief in the petition herein to the following extent:
The Board of Parole is directed to reconsider the rescission of the parole release date of the petitioner on or before the tenth day following the entry of an order herein. At such hearing the petitioner shall be entitled to the following:
1. A written notice of the claimed violations of behavior which resulted in the holding of the hearing.
2. Disclosure to the prospective parolee of evidence against him.
3. An opportunity to be heard in person and to present witnesses and documentary evidence.
4. The right to confront and cross-examine adverse witnesses.
5. A written statement by the fact finders as to the evidence relied upon and the reasons for rescinding the parole release date.
6. The right to 'have retained counsel to represent him at such hearing.
7. The burden of proof on such hearing shall ¡be upon the Board of Parole and .such rescission may not be based upon less than satisfactory evidence (People ex rel. Warren v. Mancusi, 40 A D 2d 279).
The petition also asks that records of the petitioner’s transfer to Attica be expunged. Since this is a record of what did happen and is obviously necessary to the keeping of accurate records of the .whereabouts of persons committed to the custody of the Department ¡of .Correctional Services, this cannot be done and such relief and other relief sought is denied.