Scileppi, J.
 

 The principal question raised on this appeal is whether a prospective parolee has a constitutional right to he represented by counsel at a hearing before the Board of Parole.
 

 . Appellant Salvatore Briguglio was convicted of the crime of attempted grand larceny in the first degree. He was sentenced to an indeterminate term of imprisonment of from two to four years, which he began to serve on August 5, 1966. On October 29, 1967, after 16 months of imprisonment, appellant became eligible for parole. On August 8, 1967 he was examined by the Board of Parole as required by statute (Correction Law, § 214, subd. 4), and subsequent thereto was denied parole on the ground that he was then a poor parole risk.
 

 Thereafter appellant brought a special proceeding in the Supreme Court, Albany County, seeking a determination that the action of the Board of Parole was contrary to the Constitution and laws of the State of New York and the Constitution of the United States, and a direction that the Board of Parole grant a new hearing to the appellant and also grant a new hearing on his parole eligibility before a court of the State of New York.
 

 In the petition, the appellant alleged, on information and belief, conclusions of law and fact that the appellant’s conduct in prison had been exemplary and that he could live and remain at liberty without violating the law and that, at his hearing before the Board of Parole, appellant had not been given counsel or advised of his right to counsel, had not been allowed to give evidence in his own behalf or examine opposing witnesses, and was not confronted by adverse witnesses. He contended in the petition that such action of the board violated the right to counsel and due process clauses of the Constitutions of the United States and the State of New York.
 

 The respondents served a verified answer and objections in point of law. The answer sought dismissal on the grounds that the petition did not state facts entitling the appellant to any
 
 *24
 
 relief, did not state facts sufficient to constitute a cause of action against respondents and that respondents’ determination could he reviewed only by a proceeding under article 78 of the CPLR and that the petition fails to state grounds for relief in such a proceeding. Respondents also' denied each and every allegation of the petition except that which stated appellant was being held in prison under a sentence of two to four years for the crime of attempted grand larceny. As affirmative defenses, the answer set forth contentions that respondents acted pursuant to statute, that the granting of -parole is solely a matter of discretion, and that all respondents’ actions were in accordance with the laws of the State of New York.
 

 The Supreme Court, Albany County, dismissed the petition. The court did not pass upon the merits of appellant’s qualification for parole, but rather treated the issue as one of appellant’s right to a full-blown judicial-type hearing including the right to representation by counsel. The court rejected the appellant’s contention, and on appeal the Appellate Division, Third Department, unanimously affirmed the judgment, without opinion. Appellant appeals to this court,' as of right, on constitutional grounds.
 

 Relying primarily on the recent cases of
 
 Mempa
 
 v.
 
 Rhay
 
 (389 U. S. 128) and
 
 Matter of Gault
 
 (387 U. S. 1), appellant contends that, with respect to release on parole, he has a constitutional right to a judicial-type hearing including the right to be represented by counsel, to be presented with a statement of the charges against him, to confront and cross-examine witnesses and to present evidence in his behalf.
 

 The two consolidated cases in
 
 Mempa
 
 raised the question “ of the extent of the right to counsel at the time df sentencing where the sentencing -has been deferred subject to probation (p. 130). Both petitioners had been convicted and placed on probation without being sentenced. Upon being charged with violation of probation, they were brought to court, their probation was revoked and
 
 sentence was then imposed.
 
 The State’s argument that the petitioners were sentenced at the time they were placed on probation and that the imposition of sentence following probation revocation is, in effect, a mere formality .comprising part of the probation revocation proceeding, was
 
 *25
 
 rejected by the court. Noting that the right to counsel attaches
 
 “
 
 at every stage of a
 
 criminal proceeding
 
 where substantial rights of a
 
 criminal accused
 
 may be affected ” (p. 134, emphasis added), the court cited
 
 Townsend
 
 v.
 
 Burke
 
 (334 U. S. 736) as being illustrative of the critical nature of sentencing in a criminal case and stated that
 
 Townsend ‘ ‘
 
 might well be considered to support by itself a holding
 
 that the right to counsel applies at sentencing
 
 ” (p. 134, emphasis added). Since sentencing is a critical stage of a criminal proceeding, the court held (p. 137) that “ a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing.”
 

 That
 
 Mempa
 
 is purely a
 
 sentencing
 
 case and, therefore, is of little value in defining the rights of one who has
 
 already been sentenced
 
 is made manifest by the Supreme Court’s decision in
 
 McConnell
 
 v.
 
 Rhay
 
 (393 U. S. 2, 3-4). In holding that
 
 Mempa
 
 v.
 
 Rhay (supra)
 
 is to be applied retroactively, the court said: “ This Court’s decisions on a criminal defendant’s right to counsel at trial,
 
 Gideon
 
 v.
 
 Wainwright,
 
 372 U. S. 335 (1963); at certain arraignments,
 
 Hamilton
 
 v.
 
 Alabama,
 
 368 U. S. 52 (1961); and on appeal,
 
 Douglas
 
 v.
 
 California,
 
 372 U. S. 353 (1963), have been applied retroactively. The right to counsel at sentencing is no different. As in these other cases, the right being asserted relates to
 
 ‘
 
 the very integrity of the fact-finding process.’
 
 Linkletter
 
 v.
 
 Walker,
 
 381 U. S. 618, 639 (1965); cf.
 
 Roberts
 
 v.
 
 Russell,
 
 392 U. S. 293 (1968). As we said in
 
 Mempa, ‘
 
 the necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances -and in general aiding and assisting the defendant to present his case as to sentence is apparent.’ 389 U. S., at 135.
 
 The right to counsel .at sentencing must, therefore, be treated like the right to counsel at other stages of
 
 adjudication.” (Emphasis added.)
 

 Indeed, in several cases decided within the past year, the Federal courts have held that
 
 Mempa
 
 v.
 
 Rhay (supra),
 
 being a sentencing case, sheds no light on the problem of whether a parolee is entitled to counsel at a revocation hearing (see
 
 Eason
 
 v.
 
 Dickson,
 
 390 F. 2d 585;
 
 Williams,
 
 v.
 
 Patterson,
 
 389 F. 2d 374;
 
 Rose
 
 v.
 
 Haskins,
 
 388 F. 2d 91;
 
 Holder
 
 v.
 
 United States,
 
 285 F. Supp. 380). Each of the cited cases held that a revoca
 
 *26
 
 tion -hearing is not a trial requiring an adversary proceeding with representation by counsel.
 
 *
 

 Matter of Gault (supra),
 
 another case heavily relied upon by appellant, does not, in our opinion, require that the right to counsel and other constitutional guarantees be' applied to a parole release proceeding.
 
 Gault
 
 simply held that the guarantees of the due process clause apply—-as they do in criminal cases involving an adult—-to a proceeding in which a determination is made as to whether a
 
 juvenile
 
 is “ delinquent ” as a result of alleged misconduct on his part, with the consequence that he may be committed to a State institution. The court was thus concerned only with the adjudicative or prosecutorial stage of the juvenile delinquency (criminal) proceeding. Indeed the court specifically noted that “we are not here concerned with the procedures or constitutional rights applicable to the pre-judicial stages of the juvenile process,
 
 nor do we direct our attention to the post-adjudicative or dispositional process ” (Matter of Gault, supra,
 
 p. 13; emphasis added).
 

 In our view there is simply no constitutional basis for applying the guarantees of the due process clause to a parole release proceeding. The holding of the Supreme Court in
 
 Escoe
 
 v.
 
 Zerbst
 
 (295 U. S. 490) with respect to the source of the rights of a Federal probationer applies equally to the State parolee: The privilege has no basis in the Constitution, it is purely statutory. “ [Parole] comes as a matter of grace to one convicted of a crime, and may be coupled with such conditions * "* * as [the Legislature] may impose ”
 
 (Escoe
 
 v.
 
 Zerbst, supra,
 
 pp. 492-493).
 

 As part of a general program to rehabilitate State prisoners, the Legislature has adopted a comprehensive system of parole. A Board of Parole in the Division of Parole of the Executive Department is charged with the duty of determining what prisoners serving indeterminate sentences in State prisons and other specified reformatories ‘ ‘ may be released on parole and when and under what conditions ” (Correction Law, § 210). Members of the Board of Parole must ‘£ personally study the prisoners confined in the prisons and reformatories of the state
 
 *27
 
 * * * so as to determine their ultimate fitness to be paroled ’ ’ (Correction Law, § 210). As each prisoner sentenced under an indeterminate sentence is received in the State institution, the Board of Parole
 
 must
 
 obtain and file ‘ ‘ information as complete as may be obtainable at that time with regard to each such prisoner” (Correction Law, § 211). Section 211 further provides : 1 ‘ Such information shall include a complete statement of the crime for which he is then sentenced, the circumstances of such crime, the nature of his sentence, the court in which he was sentenced, the name of the judge and district attorney and copies of such probation reports, as may have been made as well as reports as to the prisoner’s social, physical, mental and psychiatric condition and history. It shall be the duty of the clerk of the court, the commissioner of mental hygiene and all probation officers and other appropriate officials to send such information as.may be in their possession or under their control to the board of parole upon request. The board of parole shall also at that time obtain and file a copy of the complete criminal record of such prisoner and any family court record that may exist. When all such existing available records have been assembled, they shall be presented to the board, of parole or to some officer designated by it, who shall determine whether any further investigation of such prisoner is necessary at that time, and, if so, the nature of such investigation, and shall thereupon order it to be made. Such investigations shall be made while the case is still recent, and the results of them with all other information shall be filed in the office of the division so as to be readily available when the parole of such prisoner is being considered.”
 

 In addition, the Board of Parole is entitled to the benefit of reports and information from the warden of each prison in which the prospective parolee has been confined (Correction Law, § 214) and from ‘1 all officers and employees * * * of the department of correction and
 
 all other
 
 public officials [who] shall at all times cooperate with the board of parole, and shall furnish to such board, its officers and employees such information as may be necessary to enable it to perform its functions” (Correction Law, § 222; emphasis added). No prisoner may be released on parole upon his own application, “ but solely upon the initiative of the board of parole ” (Cor
 
 *28
 
 rection Law, § 214). Before a prisoner is initially released on parole, the Board of Parole must have before it a report from the warden or superintendent of the institution in which the inmate has been confined (Correction Law, § 214). That report details the inmate’s conduct in prison and the extent to which the inmate responded to efforts made in the institution to improve his mental and moral condition (Correction Law, § 214). The board must also have a statement of the prisoner’s attitude toward society and toward authority generally and specifically of his attitude toward those who arrested, prosecuted and sentenced him. The board 1 ‘ shall also have before it the report of such physical, mental and psychiatric examinations as have been made of such prisoner which so far as practicable shall have been made within two months of the time of his eligibility for parole ” (Correction Law, § 214). Finally,
 
 “
 
 before releasing any prisoner on parole,” the Board of Parole shall have him appear and “ shall personally examine him and check up so far as possible the reports ” which they have before them (§ 214). The statute (§ 213) makes it quite clear that “ Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board of parole is of opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society.”
 

 Under the present statutory scheme a prisoner is not subject to the supervision of a court which traditionally acts on notice and hearing. He is instead under active
 
 administrative
 
 supervision of trained officials whose discretionary determination to grant parole “ depends upon information in regard to the personal traits and characteristics of the individual convicted and upon unanimous concurrence of the individual members of the Board acting upon such information and personal observations ”
 
 (Matter of Hines
 
 v.
 
 State Bd. of Parole,
 
 293 N. Y. 254, 257). The Legislature has required that the board personally examine the prospective parolee but this does not mean that a full adversary-type hearing must be granted. Indeed the nature and extent of the examination is solely within the discretion of the board
 
 (Matter of O’Connor
 
 v.
 
 State
 
 Bd.
 
 of Parole,
 
 270 App.
 
 *29
 
 Div. 93). Thus, if the parole system of this State is to he altered, it should be altered by the Legislature and not by this court. In this regard it should be noted that section 305.7 (subd. [2i]) of the American Law Institute Model Penal Code (Proposed Official Draft, May 4, 1962) rejects the idea that a prisoner is entitled to counsel at a parole hearing and instead provides:
 
 “
 
 A prisoner shall be permitted to advise with any person whose assistance he reasonably desires, including his own legal counsel,
 
 in preparing for a hearing before the Board of
 
 Parole.” (Emphasis added.)
 

 Appellant also argues that the board’s determination is not supported by substantial evidence because the reports submitted to the board presumably disclosed the. following facts about appellant’s character and background: (1) his excellent prison record; (2) his close relationship with his wife and two children; (3) his substantial roots in the community to which he will return, including the ownership of a home; and (4) his status as a first offender.
 

 In our opinion, the courts below correctly refused to review the merits of appellant’s claim. Section 212 of the Correction Law provides that
 
 “
 
 The action of the board of parole in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law”. In
 
 Matter of Hines
 
 v.
 
 State Bd. of Parole (supra,
 
 p. 257) we construed this statute and held that “ so long as the Board, violates no positive statutory requirement, its discretion is absolute and beyond review in the courts”. We will not overrule
 
 Hines
 
 and involve the courts of this State in superintending the parole system.
 

 In sum, we conclude that the parole release proceeding does not require an adversary hearing. The Federal courts have consistently held, and the Supreme Court has refused to rule otherwise, that parole hearings do not involve constitutional due process. No persuasive reason has been advanced for the courts of this State to hold otherwise. The order appealed from should be affirmed, without costs.
 

 Chief Judge Fuld and Judges Burke, Bergan, Keating, Breitel and Jasen concur.
 

 Order affirmed.
 

 *
 

 Since the instant case is concerned solely with the question of whether due process rights apply at a parole release hearing, we indicate no view as to whether such rights apply at a parole revocation hearing.