THE PEOPLE OF THE STATE OF NEW YORK ex rel. PAULA HERBERT, Respondent-Appellant, v NEW YORK STATE BOARD OF PAROLE et al., Appellants-Respondents.

First Department, November 22, 1983

### APPEARANCES OF COUNSEL

*Barbara L. Linzer* of counsel (*Melvyn R. Leventhal, Gerald J. Ryan* and *Bridget E. Farrell* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants-respondents.

*Richard E. Greenberg* of counsel (*William E. Hellerstein* and *Roger Brazill,* attorneys), for respondent-appellant.

### OPINION OF THE COURT

MILONAS, J.

In 1966 when petitioner Paula Herbert was 15 years old, she dropped out of school and left her home for a life on the streets. She soon became addicted to drugs and subsequently gave birth out of wedlock to two children, the first in 1969 and the second in late 1970, both of whom are presently in foster care. Petitioner was arrested for the first time in February of 1971 and accused of criminal

possession of dangerous drugs. Seven months later, she was convicted of a misdemeanor check forging charge and placed on probation. She was by then deeply engaged in a lifestyle characterized by drug trafficking, shoplifting, check forging and random acts of violence. On December 1, 1973, petitioner, while in a neighborhood bar in Manhattan, became involved in a disagreement with one Patricia Robinson. During the course of their argument, Robinson purportedly reached toward her belt. Petitioner, feeling herself threatened, drew out a .22 caliber revolver which she had obtained in exchange for drugs and fatally shot the other woman six times, primarily in the back. Petitioner fled the scene and, approximately a month later, under similar circumstances, she got into an altercation with 19-year-old Mark Walters at a Bronx bar. Walters allegedly grabbed petitioner and, petitioner again believing herself to be in danger, pulled out a gun and shot him dead.

The incident in The Bronx resulted in petitioner's apprehension. Thereafter, it was discovered that she was also responsible for the Robinson homicide, and on July 9, 1974, she was convicted upon her plea of guilty in Supreme Court, New York County, of first degree manslaughter, receiving a sentence of 8⅓ to 25 years. The following day, she was convicted of the same crime in Bronx County and sentenced to a term of 6 to 18 years to run concurrently with the New York County judgment. Petitioner was then committed to the New York State Correctional Facility at Bedford Hills where she proceeded to experience great difficulty in complying with the institution's rules and regulations. As time passed, however, she underwent a marked change in personality and attitude and began to take advantage of the various rehabilitative programs available at Bedford Hills. She embarked upon both individual and group therapy and participated in behavior modification and alternative to violence programs. She served on the legislative action, inmate liaison and grievance committees. She worked as a keypunch operator, law researcher and business education aide, and, following a transfer to Bayview Correctional Facility, as an education clerk and secretary to the deputy superintendent. Eventually, she attained a high school equivalency diploma and

earned at least 21 college credits. It is undisputed that her performance has been exemplary.

On March 3, 1982, petitioner, having served her minimum term of 8⅓ years, appeared before the Parole Board. In advance of the release hearing, she had submitted to the board numerous affidavits and documents detailing her progress, including copies of certificates of achievement and letters supporting her release from Beverly Brooks (acting superintendent), Wilmer Carter (counselor), David Stern (acting education supervisor), Reverend Ulysses Downing, Jr. (chaplain), and S. B. Johnson (acting superintendent). In addition, petitioner outlined her plans for release, which entailed getting her children out of foster care and removing her mother from a nursing home, as well as attendance at Baruch College where she had already been accepted. During her interview with the board, she was questioned about her past conduct, her current performance and her intentions for the future, and, at its conclusion, she was advised that "[t]he record reflects that you have been doing well in the institution. Your behavior has improved significantly, but we are going to have to consider all the facts in your case. The other factor is the seriousness of these crimes." Subsequently, the board denied parole and ordered that petitioner serve another 24 months prior to reconsideration, declaring that: "Due to the gravity of your two concurrent sentences of 8 yrs. 4 Mos. to 25 years and 6 yrs. to 18 yrs. for Manslaughter 1st degree. You caused the death of a woman by shooting her repeatedly. Within one month later you caused the death of a man by shooting him. You have a prior record of arrests and had the benefit of probation and short term confinement. You also have a history of drug abuse as well. While the positive aspects of your facility adjustment is noted, the gravity of your crimes mitigate against your release at this time as being contrary to the best interest of the community."

Petitioner appealed the decision to the appellate panel of the Parole Board, which on October 21, 1982 affirmed the determination in a detailed statement. She thereafter commenced the instant suit by service of a writ of habeas corpus and petition. In an order dated June 1, 1983, the

Supreme Court, New York County, treating the action as one brought pursuant to CPLR article 78, directed that petitioner be accorded a new parole release hearing. According to the court, the Parole Board had misapplied the statutory criteria prescribed in section 259-i of the Executive Law in that (1) the board did not provide petitioner with a detailed rather than conclusory statement of its reasons for denying her parole, and (2) the board placed undue emphasis on the seriousness of the offenses for which petitioner had been incarcerated without giving adequate consideration to the mitigating factors. The court, however, rejected petitioner's contention that the board's failure to act pursuant to the requirements of section 259-i of the Executive Law warranted her immediate release.

It is the position of respondent board on appeal that the court exceeded its authority in ordering a new parole release hearing. Petitioner, on the other hand, argues that under the circumstances of this case, the appropriate remedy for the Parole Board's noncompliance with the mandates of the statute is her release from custody.

It should be noted at the outset that since "a person's rightful liberty interest is extinguished upon conviction, there is no inherent constitutional right to parole" (*Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69, 73; see, also, *Greenholtz v Nebraska Penal Inmates,* 442 US 1). Nonetheless, when a State establishes a sentencing scheme which creates a legitimate expectation of early release from prison, there does exist a liberty interest which is entitled to constitutional protection. (*Greenholtz v Nebraska Penal Inmates, supra; Matter of Russo v New York State Bd. of Parole, supra.*) The rule is that so long as the board's discretion is exercised in accordance with the statutory requirements, its discretion in matters of parole release is not judicially reviewable. (*Matter of Delman v New York State Bd. of Parole,* 93 AD2d 888; *Matter of Abrams v New York State Bd. of Parole,* 88 AD2d 951; see, also, *Matter of Briguglio v New York State Bd. of Parole,* 24 NY2d 21.)

Section 259-i (subd 2, par [c]) of the Executive Law provides that parole "shall not be granted merely as a

reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law." In determining whether a particular individual should be released, the board must consider the following factors:

"(i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interpersonal relationships with staff and inmates;

"(ii) performance, if any, as a participant in a temporary release program;

"(iii) release plans including community resources, employment, education and training and support services available to the inmate" (Executive Law, § 259-i, subd 2, par [c], cls [i], [ii], [iii]).

Other criteria which the board is obliged to take into account include "(i) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court, the district attorney, the attorney for the inmate, the pre-sentence probation report as well as consideration of any mitigating and aggravating factors, and activities following arrest and prior to confinement; and (ii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement." (Executive Law, § 259-i, subd 1, par [a], cls [i], [ii].)

Although section 259-i of the Executive Law mandates that the Board of Parole consider those criteria which are relevant to the particular inmate involved, the statute does not specify how much weight must be given to each enumerated factor. (*Matter of Qafa v Hammock*, 80 AD2d 952.) In the instant matter, the board expressly noted the positive aspects of petitioner's institutional experience. At the hearing, she was questioned about her current perfor-

mance and her plans for the future. In addition to petitioner's testimony, the board had before it extensive documentation regarding her favorable prison adjustment. There is no requirement in the law that the board place equal or greater emphasis on petitioner's present commendable .conduct than on the gravity .of her offense. Thus, in the absence of a convincing demonstration that the board did not consider the applicable standards, it must be presumed that respondent properly fulfilled its duty (*Matter of Qafa v Hammock, supra;* see, also, *Matter of Maciag v Hammock,* 88 AD2d 1106).

In view of petitioner's past history of violent behavior, addiction to drugs and violation of a prior period of probation, the board was not unjustified in concluding that her release at this time was not compatible with the welfare of society. In that connection, the fact that petitioner entered pleas of guilty to reduced charges did not preclude the board from examining the circumstances of the underlying incidents (*Matter of Maciag v Hammock, supra*), nor was it inappropriate for the board to conclude that notwithstanding petitioner's recent success in improving her life, the grave nature of her prior criminal conduct necessitated that she serve more than the minimum sentence. Moreover, the basis for the board's action in denying parole was specified with sufficient detail to inform petitioner as to the reasons for its decision and, therefore, to satisfy the requirements of section 259-i (subd 2, par [a]) of the Executive Law. Unless there has been a showing that respondent's determination was so irrational as to border on impropriety, which is certainly not the situation here, judicial intervention is not warranted. (*Matter of Russo v New York State Bd. of Parole,* 50 NY2d 69, 77, *supra.*)

Consequently, the order and judgment (one paper) of the Supreme Court, New York County (JEFFREY M. ATLAS, J.), entered on June 3, 1983, which directed that respondent New York State Board of Parole provide petitioner with a new parole release hearing, should be reversed on the law, without costs or disbursements, and the petition dismissed.

Ross, J. P., Asch and Kassal, JJ., concur with Milonas, J.; Carro, J., dissents for the reasons stated by Atlas, J.

Judgment, Supreme Court, New York County, entered on June 3, 1983, reversed on the law, without costs and without disbursements, and the petition dismissed.