[667 NYS2d 11]

In the Matter of M.G., Appellant, v BRION D. TRAVIS, as Chairman of the New York State Division of Parole, et al., Respondents.

First Department, December 9, 1997

---

### APPEARANCES OF COUNSEL

*Michael S. Pollok* of counsel *(Hoffman Pollok & Pickholz,* attorneys), for appellant.

*Andrew C. Tsunis* and *Valerie Singleton* of counsel *(Dennis C. Vacco, Attorney-General,* attorney), for respondents.

### OPINION OF THE COURT

NARDELLI, J.

Petitioner challenges the new conditions of parole that were imposed upon him in conjunction with the reporting and notification provisions of the newly enacted New York Megan's Law. While not strictly required by such law, these conditions, in toto, meet the spirit and intent of the Legislature in enacting Megan's Law and are within the responsibility of the Division of Parole. We find that the imposition of these conditions *after* petitioner's release from prison, and, indeed, after approximately eight years on parole, is not violative of petitioner's double jeopardy rights and is not arbitrary or capricious. Prevention, and not punishment, is the primary purpose of Megan's Law. While we are not unmindful of the burdens placed upon petitioner in adhering to the multiple restrictive conditions herein, it is the Division of Parole that has the judicial function of setting the terms of release in parole. The difficult area of sexual abuse of children and prevention has no one easy solution.

Petitioner was convicted in 1980 of two counts of sodomy in the first degree, one count of sexual abuse in the first degree and one count of endangering the welfare of a child and sentenced to concurrent terms of $8\frac{1}{3}$ to 25 years and 6 to 18 years on the sodomy convictions, $2\frac{1}{3}$ to 7 years on the sexual abuse conviction and a term of one year for endangering the welfare of a child. The petitioner's maximum expiration date

is September 13, 2005. Petitioner served $7^1/_2$ years and was released on parole on January 13, 1989, with three conditions: that he avoid the victims, that he seek employment and that he undergo psychotherapy. Petitioner has remained on parole for more than eight years without a single allegation of any violation. However, after the passage of the New York State Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*), commonly referred to as New York's "Megan's Law," which became effective on January 21, 1996, the respondents imposed upon the petitioner what he refers to as 17 new "special conditions" of parole in May and June of 1996 without notice or an opportunity to be heard.

Since the petitioner refers to 17 conditions and the respondents mention 14 new conditions, we have taken the new conditions mentioned in the three dated certificates from the Division of Parole signed by petitioner "under protest" in May and June of 1996. Instead of citing each of the conditions in detail, we enumerate them in the following titles that describe their nature: (1) Registration, (2) Therapy, (3) No contact with victims, (4) Curfew, (5) No contact with minors, (6) Avoidance of play areas, (7) No possession of toys, (8) No employment, salaried or volunteer, in a facility where minors are present, (9) No use of a post office box, (10) Avoidance of scene of prior sexual crimes, (11) No travel outside the five boroughs of New York City, (12) No possession of sexually explicit or pornographic material, (13) No participation in any on-line computer service involving the exchange of pornographic or sexually explicit messages, (14) No possession of video equipment, (15) No telephone calls to sexual services, (16) No employment in private homes, (17) No picking up hitchhikers or offering rides to others in automobile, (18) No consumption of alcohol or remaining in location that provides alcohol.

Almost all of the conditions provide that exemptions can be sought and obtained with the prior knowledge and consent of the parole officer.

In July of 1996, the petitioner brought this CPLR article 78 proceeding seeking to enjoin the Division of Parole from enforcing these "special conditions" and to annul them as arbitrary and capricious. Petitioner also contends that the imposition of these conditions constitutes "punishment" for the same offense and, therefore, is violative of the Double Jeopardy Clause of the United States Constitution and article I (§ 6) of the New York State Constitution.

The condition that petitioner register with the Sex Offenders Registry imposed under the New York State Sex Offender

Registration Act (Correction Law § 168 *et seq.)* is constitutional. The requirement for sex offenders to register under the Act has been upheld by the Federal court in *Doe v Pataki* (940 F Supp 603, *affd in part and revd in part* 120 F3d 1263). The District Court further upheld the retroactivity of the registration provisions under the Act (*supra,* at 630-631). The Court of Appeals for the Second Circuit found, contrary to the conclusion of the District Court, that the *notification* requirements of the statute did not constitute "punishment for purposes of the Ex Post Facto Clause" (120 F3d, *supra,* at 1285). The court, however, agreed with the District Court that "the registration requirements of the SORA do not impose punishment" (*supra,* at 1284). *Doe v Pataki* dealt with the issue of whether Megan's Law violated article I (§ 10) of the United States Constitution, which prohibits States from enacting ex post facto statutes. The Legislature is prohibited from retroactively changing the definition of a crime or increasing the punishment for it (*Collins v Youngblood,* 497 US 37, 43). The Second Circuit Court of Appeals recognized that the statute was civil and remedial and not criminal and punitive in purpose (*see, United States v One Assortment of 89 Firearms,* 465 US 354, 362) and upheld it against challenge on the basis that the requirements for notification and registration did not constitute punishment (*Doe v Pataki, supra*).

The registration provisions of the New York Megan's Law also do not violate petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as multiple punishments for the same offense. As noted, the provisions of the Act do not constitute "punishment." The registration provisions were adopted as a remedial measure to ameliorate the danger to the public caused by the release of sex offenders, to address recidivism and to provide law enforcement with an investigative tool for identifying and acting upon potential recurrence of sexual offenses by past offenders.

In a recent decision, the Court of Appeals, in an opinion by Judge Wesley, found that the criminal prosecution of inmates who have previously been the subject of internal prison disciplinary sanctions does not offend either the constitutional or the statutory (CPL art 40) protections against double jeopardy (*see, People v Vasquez,* 89 NY2d 521, *cert denied sub nom. Cordero v Lalor,* — US —, 118 S Ct 131, and Double Jeopardy history set forth therein at p 527 *et seq.*). A fortiori, the promulgation of conditions of parole for inmates who have

been released before the expiration of their sentences does not constitute a violation of this constitutional protection. In fact, as noted, it is not even implicated, since we are *not* dealing with punishment at all, but prevention and deterrence.

Petitioner's contention that he should have been afforded a hearing before the imposition of the new conditions is without merit. There is no Federal or State constitutional right for an inmate to be released before serving his full sentence (*Greenholtz v Nebraska Penal Inmates*, 442 US 1; *People ex rel. Grimmick v McGreevy*, 141 AD2d 989, *lv denied* 73 NY2d 702) and the State has the discretion to place conditions on parole release (*Board of Pardons v Allen*, 482 US 369; Executive Law § 259-c [2]; § 259-g [1]-[2]; § 259-i [5]; 9 NYCRR 8003.2).

The decision of the New York State Division of Parole to impose special conditions upon the release of an inmate is not subject to the supervision of a court, but such prisoner is, instead, "under active *administrative* supervision of trained officials whose discretionary determination" (*Matter of Briguglio v New York State Bd. of Parole*, 24 NY2d 21, 28 [emphasis in original]) is absolute and beyond review in the courts as long as no positive statutory requirement is violated (*supra,* at 29). The Court of Appeals in *Matter of Briguglio* and its predecessor cases so interpreted section 212 of the Correction Law, the applicable statute at that time, which stated, in pertinent part, that "The action of the board of parole in releasing prisoners shall be deemed a judicial function and shall not be reviewable if done according to law." Present Executive Law § 259-i (5) remains almost exactly the same: "Any action by the board or by a hearing officer pursuant to this article shall be deemed a judicial function and shall not be reviewable if done in accordance with law" (*see also,* Executive Law § 259-c [2]; § 259-g [1]-[2]; 9 NYCRR 8003.2, 8003.3). The imposition of conditions may occur prior to or *subsequent to release* on parole (9 NYCRR 8003.3). In addition, the circumstances of the parolee's crime may be taken into account when setting these conditions. Thus, the Second Department has reversed the Supreme Court's direction to the Division of Parole to delete special conditions prohibiting a parolee's employment as a chauffeur or even operating a motor vehicle without his parole officer's permission. In so doing, the Court noted that the petitioner there had been convicted of sodomy and attempted sodomy in attacks on three young children where the victims were lured into the petitioner's car, where the attacks occurred: "The petitioner's parole officer and one of the parole officer's supervisors

determined that preventing the petitioner from having access to the means of his past criminal acts was warranted in order to protect public safety. Accordingly, the parole officer imposed a special condition whereby the petitioner was prohibited from working as a professional driver without express prior approval from the Division of Parole, and his supervisor later broadened that restriction by denying him permission to obtain a driver's license or to operate a motor vehicle absent prior approval from his parole officer. Because these determinations were made in the lawful exercise of official discretion, the Supreme Court erred in substituting its view of the petitioner's case for that of the petitioner's parole officer and his supervisor, and its judgment must therefore be reversed (*see, Matter of Briguglio v New York State Bd. of Parole*, 24 NY2d 21, *supra*)." (*Matter of Gerena v Rodriguez*, 192 AD2d 606, 607.)

In this case, likewise, the special conditions imposed are rationally related to petitioner's past conduct and are apparently designed to reduce the opportunities for petitioner to relapse into sexual misconduct with minors. An analysis of the conditions shows that each is intended to deter recidivism and prevent further offenses, whether they, *inter alia*, relate to attending venues where children congregate, being alone with children without an adult aware of his past record being present, using any on-line computer service that involves the exchange of pornographic or sexually explicit electronic messages, or drinking alcoholic beverages or attending establishments that serve alcoholic beverages. Thus, while petitioner seeks to show that his First Amendment rights have been curtailed by the prohibition on using computer services, this condition is narrowly tailored solely to prevent petitioner from exchanging pornographic messages. Certainly, no lengthy explication is needed, in this age of "internet pedophilia," to show the wisdom of this condition in preventing recidivism. Likewise, while petitioner asserts he cannot attend a restaurant with his wife where alcohol is served on the premises, this condition is appropriate because alcohol loosens inhibitions in some persons and may lead to the commission of sexual crimes. The respondents also note that petitioner has been given permission, when he sought it, to visit his grandchildren and leave the City. Petitioner does not allege he sought and was denied permission to attend any restaurant with his wife.

Finally, petitioner asserts that the condition that he enter therapy is "unfounded and an unwarranted intrusion" into his private life. The Division of Parole believes continued therapy

or counseling is necessary because petitioner has not fully accepted the fact that he has hurt his victims. In fact, in a statement to a psychiatrist, petitioner said his sexual abuse of the girls was an attempt to give them "sex education" and was "really stupid" although his intent at that time was "pure and good." In a report of the Association of the Bar of the City of New York, the Committee on Criminal Law, in issuing general principles on Megan's Law, has noted in one of the "talking points," "Although some people believe that Megan's Law is not designed to include a treatment plan, a treatment plan is necessary to address a sex offender's psychological disorder * * * Additionally, a treatment plan is necessary for the safety of the general public" (*Committee on Criminal Law, Principles on Megan's Law*, 52 Record of Assn of Bar of City of NY 704, 711 [principle 6 (D)] [Oct. 1997]).

While we recognize that perhaps others would not impose all of the conditions that were imposed by the respondent, we are not permitted to substitute our discretion for that of petitioner's parole supervisors (*Matter of Briguglio v New York State Bd. of Parole, supra*; *Matter of Gerena v Rodriguez, supra*). It is sufficient that none of the conditions is arbitrary and capricious and all of them are reasonably related to petitioner's past crime and future chances of recidivism. With regard to their strict or rigid application, as noted, when petitioner has communicated with his parole officer and requested modifications of the conditions, the officer has consented in the exercise of his discretion.

Accordingly, the order of the Supreme Court, New York County (Norman Ryp, J.), entered on or about March 31, 1997, which, *inter alia*, dismissed the petition, should be affirmed, without costs or disbursements.

WALLACH, J. P., TOM, MAZZARELLI and COLABELLA, JJ., concur.

Order, Supreme Court, New York County, entered on or about March 31, 1997, affirmed, without costs or disbursements.