Matter of Banks v Stanford (2018 NY Slip Op 00829)





Matter of Banks v Stanford


2018 NY Slip Op 00829


Decided on February 7, 2018


Appellate Division, Second Department


Dillon, J.P., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 7, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
LEONARD B. AUSTIN
SYLVIA O. HINDS-RADIX
JOSEPH J. MALTESE, JJ.


2015-12596
 (Index No. 2456/14)

[*1]In the Matter of Frank H. Banks, respondent, 
v
Tina Marie Stanford, etc., appellant.



APPEAL by Tina Marie Stanford, as the Chairperson of the State Board of Parole, in a proceeding pursuant to CPLR article 78 to review a determination of the New York State Board of Parole dated July 30, 2014, which, after a parole release review and interview pursuant to Executive Law § 259-i, denied the petitioner's request to be released on parole, as limited by her brief, from so much of an order of the Supreme Court (Victor G. Grossman, J.) dated December 2, 2015, and entered in Putnam County, as granted the petitioner's motion to hold her in civil contempt for failure to comply with a judgment of the same court dated May 14, 2015.



Eric T. Schneiderman, Attorney General, New York, NY (Anisha S. Dasgupta and Philip V. Tisne of counsel), for appellant.
Frank H. Banks, Otisville, NY, respondent pro se.



DILLON, J.P.


OPINION & ORDER
This is an appeal from an order holding the Chairperson of the New York State Board of Parole (hereinafter the Board) in civil contempt for the manner in which the Board proceeded after the Supreme Court remitted the matter for a "de novo hearing." In determining this appeal, we are called upon to define and clarify the distinction in Executive Law § 259-i between a parole "hearing" and a parole "interview."
I. Facts
The petitioner, Frank H. Banks, was convicted on February 26, 1987, in the Supreme Court, Kings County (Pincus, J.), of murder in the second degree, manslaughter in the first degree, attempted robbery in the first degree, and criminal possession of a weapon in the second degree. The convictions arose out of an incident which had occurred three years earlier, in which the petitioner and others committed an attempted armed robbery of a taxi dispatch garage. During the attempted robbery, the petitioner and his accomplices ordered the garage employees to lie on the floor, and several gunshots were fired. When a 60-year-old garage employee attempted to resist, the petitioner shot him in the stomach "at point blank range," killing him. The petitioner and his accomplices fled the scene in a vehicle that almost ran down a sanitation worker when it mounted a sidewalk in an attempt to bypass a garbage truck. A license plate number was taken, which helped lead to the petitioner's arrest.
The petitioner committed the attempted robbery to support what he later described as a "gambling fetish." He had previously been convicted of various crimes, including criminal possession of a weapon in the fourth degree in 1981, attempted grand larceny in the third degree in 1982, and criminal possession of a weapon in the third degree in 1983. As relevant here, the petitioner was sentenced by the Supreme Court to a term of imprisonment of 25 years to life for [*2]the conviction of murder in the second degree, 12½ to 25 years for the conviction of manslaughter in the first degree, 7½ to 15 years for the conviction of attempted robbery in the first degree, and 7½ to 15 years for the conviction of criminal possession of a weapon in the second degree. The sentences for manslaughter, attempted robbery, and criminal possession of a weapon ran consecutively to one another, and all ran concurrently with the sentence for murder in the second degree. Upon the defendant's appeal from the judgment of conviction, this Court modified the judgment to the limited extent of providing that all sentences were to run concurrently with each other (see People v Banks, 208 AD2d 759). In doing so, this Court explained that the petitioner's criminal possession of a gun immediately prior to the shooting did not establish sufficient proof of a separate and distinct act as to justify the imposition of consecutive sentences (see id. at 760). This Court denied the petitioner's subsequent application for a writ of error coram nobis, holding that he had failed to establish that he was denied the effective assistance of appellate counsel (see People v Banks, 234 AD2d 377).
The record indicates that the petitioner first became eligible for parole release in 2010, and his application was denied on July 21, 2010. The petitioner's second application for parole was denied in July 2012.
On July 29, 2014, the petitioner appeared before the Board of Parole on his third parole application interview. On July 30, 2014, the Board denied the petitioner's third application for parole release. The Board's written decision stated that it had conducted a careful review of the record and interview, and that the petitioner's "release would not be compatible with the welfare of society." The Board noted the "heinous nature" of the crimes, which caused the death of the victim and reflected "a propensity for violence and a callous disregard for the sanctity of human life." The Board further explained that it had considered all required statutory parole factors, including risk to the community, rehabilative efforts, needs for successful reintegration into society, institutional adjustment, community support, and community opposition. The Board concluded that despite the petitioner's positive efforts while incarcerated, his release would undermine respect for the law and trivialize the loss of life he had caused.
In August 2014, the petitioner filed an administrative appeal. The Appeals Unit did not decide the appeal within four months of its receipt of the notice of appeal. Thus, the petitioner sought judicial review of the determination dated July 30, 2014.
By order to show cause dated December 12, 2014, and verified petition dated December 8, 2014, the petitioner commenced a proceeding pursuant to CPLR article 78 to annul the Board's determination and to direct the Board to conduct a de novo parole release hearing. The petitioner argued that the Board's decision was arbitrary and capricious, that it failed to explain how his release would be incompatible with the welfare of society, and that it did not explain how his release would trivialize the loss of life.
In her verified answer, dated January 30, 2015, Tina Marie Stanford, the Board's Chairperson, maintained that the Board properly considered all required statutory factors and did not act arbitrarily or capriciously. Alternatively, Stanford argued that if the Board's decision met the legal standard of irrationality bordering on impropriety, the petitioner's remedy was not a judicial determination granting parole, but rather, "a de novo parole interview."
In a judgment dated May 14, 2015, the Supreme Court granted the CPLR article 78 petition. The court determined that the Board's decision to deny parole to the petitioner was arbitrary and capricious, irrational, and improper, primarily because it relied solely and conclusorily upon the nature of the underlying offenses. As particularly relevant here, the court's decretal paragraph "ORDERED that the matter [be] remitted to Stanford for a de novo hearing on the matter of Petitioner's release to parole supervision."
On July 28, 2015, the Board did not conduct a de novo evidentiary "hearing." There was instead a de novo "interview" of the petitioner and his record was re-examined. The transcript of the interview is ten pages in length. During the course of the interview, the petitioner had an opportunity to discuss his lack of disciplinary history since 2005, his prospects for future employment if granted parole, his interest in religion, his education and aggression replacement training while incarcerated, the crimes underlying his convictions, his COMPAS Risk Assessment, his 2010 Quantitative Profile, and his remorse for the 1987 murder.
An oral decision, once again denying parole, was placed on the record at the conclusion of the de novo interview. Thereafter, in a written decision dated September 14, 2015, the Board explained that parole was not merely a reward for good behavior and accomplishments [*3]while in prison, which it noted were factors in the petitioner's favor. The Board found that the petitioner's crimes represented an escalation of his history of criminal activity, and reiterated its prior finding that a parole release would trivialize the gravity of harm inflicted upon the victim and his family, and be incompatible with the welfare of society.
On August 27, 2015, after the Board had rendered its oral decision denying parole, the petitioner moved to hold Stanford in contempt for failing to comply with the May 14, 2015, judgment. The petitioner primarily argued that the review that was conducted pursuant to the judgment was a "sham," in that it resulted in a decision that was conclusory and again reliant upon the nature of the underlying offenses. In opposition, Stanford argued, inter alia, that the Board fully complied with the judgment by providing a de novo interview and a fresh consideration of all relevant factors that parole boards are statutorily required to consider.
In the order appealed from, dated December 2, 2015, the Supreme Court granted the petitioner's motion, held Stanford in civil contempt, annulled the Board's July 2015 determination, remitted the matter to Stanford for yet another de novo hearing, and imposed a fine in the sum of $250 on Stanford. The court's focus in finding Stanford in civil contempt was different from that argued by the parties in their submissions. The court noted that in its judgment dated May 14, 2015, it had expressly directed Stanford to conduct a de novo "hearing," and that the Board instead only provided, by its own admission, a de novo "interview." The court stated that its direction that the petitioner receive a new "hearing" was intended to include the de novo compilation of records, reports, and recommendations addressing the prospective parolee's suitability for release, which was not performed by the Board.
For the reasons set forth below, we reverse the order appealed from and deny the petitioner's motion to hold Stanford in civil contempt.
II. The Law of Civil Contempt
An often-cited opinion from the Court of Appeals defining the elements of civil contempt is Matter of McCormick v Axelrod (59 NY2d 574, amended on other grounds 60 NY2d 652), and its elements are not in dispute here. First, there must be a lawful order of the court in effect clearly expressing an unequivocal mandate. Second, it must appear with reasonable certainty that the court's mandate has been disobeyed. Third, the party to be held in contempt must have had knowledge of the court's order. And fourth, the violation of the court's order must be shown to impede, impair, or prejudice the rights of another party (see id. at 583; see also Judiciary Law § 753[A][3]; El-Dehdan v El-Dehdan, 26 NY3d 19, 29; McCain v Dinkins, 84 NY2d 216, 226; Suiss v Baron, 107 AD3d 690, 690-691; Bennet v Liberty Lines Tr., Inc., 106 AD3d 1038, 1040; Gomes v Gomes, 106 AD3d 868, 868-869; GMCK Realty, LLC v Mihalatos, 95 AD3d 947, 949). The aim of civil contempt is to vindicate a party's right to the benefits of a judicial mandate or to compensate that party for the interference by the contemnor (see McCain v Dinkins, 84 NY2d at 226; Matter of McCormick v Axelrod, 59 NY2d at 583; State of New York v Unique Ideas, 44 NY2d 345, 349; Dalessio v Kressler, 6 AD3d 57, 65). The party seeking a finding of contempt bears the burden of proving its elements by clear and convincing evidence (see El-Dehdan v El-Dehdan, 26 NY3d at 29; Cassarino v Cassarino, 149 AD3d 689; Scialdone v Stepping Stones Assoc., L.P., 148 AD3d 955; Matter of Fitzgerald, 144 AD3d 906, 907; Maddaloni v Maddaloni, 142 AD3d 646, 654; Matter of Cassidy v New York State Bd. of Parole, 140 AD3d 953, 954-955).
Stanford argues that the Supreme Court failed to define, in its judgment dated May 14, 2015, what it meant by the term "de novo hearing," and that if the court intended to direct a quasi-judicial evidentiary hearing rather than a new parole "interview" with a re-examination of records, it should have said so. In effect, Stanford argues that the judgment she was found to have violated was neither clear nor unambiguous as to the act which was the predicate for the finding of contempt.
Stanford also argues that, in any event, there was no violation of the Supreme Court's judgment in the first instance. After the court remitted the matter, the Board updated the petitioner's file with the results of a new COMPAS instrument assessment and additional letters supporting his application. It sought victim impact statements, and it compiled the petitioner's various records, reports, and recommendations. The Board conducted a de novo interview, which it explained to the petitioner was a "do over," and told him that it would assess his suitability for release based upon the updated information. The Board ultimately concluded, inter alia, that the seriousness of the murder committed by the petitioner outweighed his personal [*4]growth and productive use of time while imprisoned. Therefore, Stanford urges that the Board provided the petitioner with everything that it understood the court to have directed in the judgment dated May 14, 2015.
For his part, the petitioner argues that the Board failed to provide him a fair and impartial de novo hearing, as the Supreme Court had given a clear and unequivocal mandate to hold a "hearing" and the Board failed to do so by conducting a mere "interview."
The parties never specifically argued before the Supreme Court the issue of whether the Board's conduct of a de novo "interview" was substantively or procedurally different from the "hearing" ordered by the court. However, in the order appealed from, the court clearly used the distinction between an "interview" and a "hearing" as the basis for its contempt finding against Stanford. As such, the issue is properly before us on this appeal (see Tirado v Miller, 75 AD3d 153, 161).
III. The Requirements of Executive Law § 259-i
The Board's release decisions are discretionary, and if made in accordance with statutory requirements, they are not subject to judicial review (see Executive Law § 259-i[5]; Matter of Wade v Stanford, 148 AD3d 1487; Matter of Almonte v New York State Bd. of Parole, 145 AD3d 1307; Matter of Kirkpatrick v Travis, 5 AD3d 385; Matter of Wright v Travis, 284 AD2d 544; Matter of Secilmic v Keane, 225 AD2d 628, 628-629; Matter of Macon v New York State Bd. of Parole, 176 AD2d 880; People ex rel. Herbert v New York State Bd. of Parole, 97 AD2d 128, 133). For this reason, judicial review of parole board determinations is narrowly circumscribed (see Matter of Briguglio v New York State Bd. of Parole, 24 NY2d 21, 29; Matter of Esquilin v New York State Bd. of Parole, 144 AD3d 797; Matter of Sellers v Stanford, 144 AD3d 691, 692; Matter of Huntley v Stanford, 134 AD3d 937; Matter of Marszalek v Stanford, 124 AD3d 665; Matter of Hardwick v Dennison, 43 AD3d 406, 407). A parole determination may be set aside only where the Board's determination to deny an early release evinces "irrationality bordering on impropriety" (Matter of Russo v New York State Bd. of Parole, 50 NY2d 69, 77; see also Matter of Silmon v Travis, 95 NY2d 470, 476; Matter of LeGeros v New York State Bd. of Parole, 139 AD3d 1068, 1069; Matter of Jackson v Evans, 118 AD3d 701, 702; Matter of Goldberg v New York State Bd. of Parole, 103 AD3d 634; Matter of Stanley v New York State Bd. of Parole, 92 AD3d 948, 949; Matter of Duffy v New York State Div. of Parole, 74 AD3d 965, 966; Matter of Martinez v New York State Div. of Parole, 73 AD3d 1067).
Executive Law § 259-i is entitled "Procedures for the conduct of the work of the state board of parole." The grant or denial of parole in any given instance involves the interplay of subdivisions (2)(a)(i), (2)(c), and (6) of Executive Law § 259-i, each of which is quoted here seriatim:
Executive Law § 259-i(2)(a)(i) provides, in relevant part, that:
"[e]xcept as provided in subparagraph (ii) of this paragraph, at least one month prior to the date on which an inmate may be paroled pursuant to subdivision one of section 70.40 of the penal law, a member or members as determined by the rules of the board shall personally interview such inmate and determine whether he should be paroled in accordance with the guidelines adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article. If parole is not granted upon such review, the inmate shall be informed in writing within two weeks of such appearance of the factors and reasons for such denial of parole. Such reasons shall be given in detail and not in conclusory terms. The board shall specify a date not more than twenty-four months from such determination for reconsideration, and the procedures to be followed upon reconsideration shall be the same" (emphasis added).
Executive Law § 259-i(2)(c)(A) provides, in relevant part, that:
"Discretionary release on parole shall not be granted merely as a reward for good conduct or efficient performance of duties while [*5]confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law. In making the parole release decision, the procedures adopted pursuant to subdivision four of section two hundred fifty-nine-c of this article shall require that the following be considered: (i) the institutional record including program goals and accomplishments, academic achievements, vocational education, training or work assignments, therapy and interactions with staff and inmates; (ii) performance, if any, as a participant in a temporary release program; (iii) release plans including community resources, employment, education and training and support services available to the inmate . . . ; (vii) the seriousness of the offense with due consideration to the type of sentence, length of sentence and recommendations of the sentencing court . . . (viii) prior criminal record, including the nature and pattern of offenses, adjustment to any previous probation or parole supervision and institutional confinement."
Executive Law § 259-i(6)(a)(i), entitled "Record of proceedings," provides, in relevant part, that:
"The board shall provide for the making of a verbatim record of each parole release interview, except where a decision is made to release the inmate to parole supervision" (emphasis added).
Notably, Executive Law § 259-i(2)(a)(i) and (6)(a)(i) make reference to the conduct of a parole "interview" and the making of a record of each parole release "interview." The term "hearing" is not used in the enabling statute for parole release determinations. Rather, the term "hearing" is only used in the statutory context of parole revocations under Executive Law § 259-i(3)(c)(i) et seq., which is not at issue here. Accordingly, when the Supreme Court granted the petitioner's article 78 petition to the extent of directing that de novo proceedings be conducted at the Board, it had no statutory authority to direct the conduct of any quasi-judicial "hearing," and only had the statutory authority to direct that the Board provide a de novo "interview" in accordance with Executive Law 259-i(2)(a)(i).
Our construction of the Executive Law is consistent with the reasoning of the Court of Appeals set forth in Matter of Briguglio v New York State Bd. of Parole (24 NY2d 21). There, the Court of Appeals held that an inmate seeking parole release was not entitled to a "full adversary-type hearing" (id. at 28), as "there is simply no constitutional basis for applying the guarantees of the due process clause to a parole release proceeding" (id. at 26). It explained that parole is not constitutionally based, but is a creature of statute which may be subject to conditions imposed by the state legislature (see id.; see also Matter of Cummings v Regan, 45 AD2d 415, 416-417, revd on other grounds 36 NY2d 969; Menechino v Oswald, 430 F2d 403, 407 [2d Cir]). A proceeding to determine whether an inmate should be released on parole is also not a quasi-judicial hearing (see Matter of Hamilton v New York State Div. of Parole, 119 AD3d 1268, 1270 n 1). In contrast, where the actual revocation of parole is at issue, the right of an individual to continue at liberty is placed in jeopardy. Thus, the parolee is entitled to the panoply of due process rights afforded by article 1, section 6, of the New York State Constitution, including that of a full evidentiary hearing and representation by counsel (see Matter of Lopez v Evans, 25 NY3d 199, 205; People ex rel. Matthews v New York State Div. of Parole, 58 NY2d 196, 203-204; People ex rel. Menechino v Warden, Green Haven State Prison, 27 NY2d 376, 382).
That said, a parole "interview" cannot be understood as merely consisting of a mere face-to-face appearance by the inmate before the parole board. The term has broader application, as it speaks to a process that statutorily requires consideration of a panoply of [*6]materials including the inmate's institutional record of goals, accomplishments, academic achievements, vocational education, training, or work assignments; performance evaluations from any temporary release program; available post-release community resources, employment, education, training, and support services; crime victim statements; the considerations relevant at the time of sentencing; and the inmate's criminal history (see Executive Law § 259-i[2][c]). When an inmate petitioner is entitled to a new "interview" as a result of a successful article 78 challenge, the inmate must then be afforded the full evaluative process described by Executive Law § 259-i(2)(c).
Here, the authority and propriety of the Supreme Court's judgment dated May 14, 2015, is not at issue, as the court simply made a determination in the CPLR article 78 proceeding, and the judgment was never reargued or appealed (see Rubeo v National Grange Mut. Ins. Co., 93 NY2d 750, 753-754; Bray v Cox, 38 NY2d 350, 353). This appeal is limited to the order dated December 2, 2015, granting the petitioner's motion to hold Stanford in contempt on the ground that the Board failed to comply with the judgment dated May 14, 2015. Pursuant to the relevant provisions of the Executive Law governing the Board's procedures, we conclude that the court was without authority to order a de novo evidentiary "hearing," as the petitioner was only entitled to a de novo parole release "interview" and review (see Executive Law § 259-i[2][a][i]). Applying our well-established contempt jurisprudence, it cannot be said that the language employed in the judgment dated May 14, 2015, was clear and unambiguous since the Board could have reasonably understood and interpreted the judgment as directing it to conduct a de novo interview consistent with the requirements of the controlling statutory language. Contempt findings are inappropriate where, as here, there can be a legitimate disagreement about what the terms of an order or judgment actually mean (see Cervera v Bressler, 109 AD3d 779, 780; Penavic v Penavic, 88 AD3d 671, 673; Chambers v Old Stone Hill Rd. Assoc., 66 AD3d 944, 946; Matter of King v King, 249 AD2d 395, 396). The Board endeavored to comply with the judgment dated May 14, 2015, by providing a de novo parole release interview with a reconsideration of the petitioner's record consistent with its statutory mandate under the Executive Law and consistent with its common practices. Thus, one of the necessary elements of civil contempt is lacking (see O'Brien v O'Brien, 115 AD3d 720, 724; Palladino v Palladino, 89 AD3d 814, 815; Collins v Telcoa Intl. Corp., 86 AD3d 549, 550; Massimi v Massimi, 56 AD3d 624, 624-625).
If, as we suspect, the parlance of the legal community sometimes uses the terms "interview" and "hearing" interchangeably in the context of parole release matters, it should do so no longer. Decisions from trial and appellate courts have likewise inartfully confused the two terms, frequently referring to parole release "hearings," though not meant in the sense of adversarial proceedings (see Silmon v Travis, 95 NY2d at 473; Matter of Bush v Annucci, 148 AD3d 1392, 1393; Matter of Rossakis v New York State Bd. of Parole, 146 AD3d 22, 25; Matter of Cassidy v New York State Bd. of Parole, 140 AD3d at 954; Matter of Fischer v Graziano, 130 AD3d 1470; Matter of Cardew v Fischer, 115 AD3d 1193, 1194). The term "interview" expressly applies to parole release procedures, while the term "hearing" applies to parole revocation procedures (compare Executive Law § 259-i[2][a][i] and [6][a][i] with 259-i[3][c][i]). Under the circumstances of this case, the confusion engendered by the Supreme Court's use of the incorrect terminology in its judgment dated May 14, 2015, prompted the petitioner's later contempt application, and renders a finding of contempt against the respondent unsupportable at law.
IV. Alternatively, Under the Circumstances, a Finding of Contempt was an Improvident Exercise of Discretion
Every contempt application must be decided on the basis of its own unique facts and circumstances. The question of whether to grant a motion for civil contempt, and if so, the fixing of an appropriate remedy, is addressed to the sound discretion of the motion court upon consideration of the surrounding circumstances (see Collins Telcoa Intl. Corp., 86 AD3d at 550; Matter of Philie v Singer, 79 AD3d 1041, 1042; Bais Yoel Ohel Feige v Congregation Yetev Lev D'Satmar of Kiryas Joel, Inc., 78 AD3d 626).
Here, the circumstances surrounding the petitioner's motion did not warrant a finding of civil contempt against Stanford, and it was an improvident exercise of discretion for the Supreme Court to have made such a finding. After receiving the judgment dated May 14, 2015, the Board retrieved the petitioner's parole-related records, reports, and recommendations, [*7]updated the file with a new COMPAS assessment and additional letters of support, and conducted an extensive interview where the petitioner had a full and fair opportunity to address a wide variety of relevant issues. The fact that the Board ultimately decided to once again deny the petitioner's application for parole release is of no significance here. The record reveals that the Board endeavored to comply with the May 14, 2015, judgment by providing a de novo procedure which followed the Executive Law and which resulted in a renewed consideration of the petitioner's request for parole release.
V. The Supreme Court Exceeded its Authority in Annulling the July 2015 de novo Determination
A court is generally limited to noticed issues that are the subject of the motion before it (see CPLR 2214[a]; DiDonato v Dyckman, 121 AD3d 638, 640; see also Dunham v Hilco Constr. Co., 89 NY2d 425, 429; Baron v Brown, 101 AD3d 915; Quizhpe v Luvin Constr., 70 AD3d 912, 914).
Here, the Supreme Court, in the order appealed from, was without jurisdiction to annul the Board's July 29, 2015, denial of parole. There is nothing in the record to indicate that the petitioner either administratively appealed from the July 29, 2015, Board determination, or commenced a separate CPLR article 78 proceeding seeking judicial review of the determination. The only application before the court was the petitioner's motion seeking statutory remedies for contempt (see Judiciary Law § 753[A]). The remedies for contempt differ from the equitable mandamus remedies available in CPLR article 78 proceedings.
We need not reach the parties' remaining contentions in light of our determination.
Accordingly, the order dated December 2, 2015, is reversed, on the law, and the petitioner's motion to hold Stanford in civil contempt for failure to comply with the judgment dated May 14, 2015, is denied.
AUSTIN, HINDS-RADIX and MALTESE, JJ., concur.
ORDERED that the order dated December 2, 2015, is reversed, on the law, without costs or disbursements, and the petitioner's motion to hold Stanford in civil contempt for failure to comply with the judgment dated May 14, 2015, is denied.
ENTER:
Aprilanne Agostino
Clerk of the Court